UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, and ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>UNIMATIC MANUFACTURING CORPORATION, CARDEAN, LLC, FRAMEWARE, INC., and PROFILES, LLC,<br><br>Defendants. | Civil No. 2:20-cv-17284 |

**CONSENT DECREE**

TABLE OF CONTENTS


I. BACKGROUND ..... 1
II. JURISDICTION ..... 2
III. PARTIES BOUND ..... 2
IV. DEFINITIONS ..... 2
V. STATEMENT OF PURPOSE ..... 5
VI. PAYMENT OF RESPONSE COSTS ..... 6
VII. FAILURE TO COMPLY WITH CONSENT DECREE ..... 11
VIII. COVENANTS BY PLAINTIFFS ..... 12
IX. RESERVATION OF RIGHTS BY UNITED STATES AND THE STATE ..... 13
X. COVENANTS BY SETTLING DEFENDANTS ..... 14
XI. EFFECT OF SETTLEMENT/CONTRIBUTION ..... 15
XII. PROPERTY REQUIREMENTS ..... 16
XIII. ACCESS TO INFORMATION ..... 18
XIV. RETENTION OF RECORDS ..... 20
XV. NOTICES AND SUBMISSIONS ..... 20
XVI. RETENTION OF JURISDICTION ..... 22
XVII. INTEGRATION/APPENDICES ..... 22
XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ..... 22
XIX. SIGNATORIES/SERVICE ..... 23
XX. FINAL JUDGMENT ..... 23

# I. BACKGROUND

A. The United States of America ("United States"), on behalf of the Administrator of the U.S. Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606 and 9607 ("CERCLA"), seeking injunctive relief and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Unimatic Manufacturing Corporation Superfund Site in Fairfield, Essex County, New Jersey ("the Site").

B. The State of New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund (collectively referenced herein as "NJDEP" or the "State") joined in EPA's complaint against the defendants in this Court alleging that the defendants are liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607, and also under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 through 23.24 ("Spill Act"). The State in its complaint seeks injunctive relief and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Site, and for reimbursement of past and future cleanup and removal costs as a result of the discharge of hazardous substances at the Site.

C. In response to the release or threatened release of hazardous substances at or from the Site, EPA and NJDEP undertook response actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and will undertake additional response actions in the future. Settling Defendant Unimatic operated an aluminum die casting facility at the Site from 1955 to 2001. During that time, Settling Defendant Unimatic used lubricating oils containing polychlorinated biphenyls ("PCBs") in the die casting operation that were released into the environment through drains, pipes, and other means. In April 2002, Settling Defendant Unimatic sold the property at 25 Sherwood Lane in Fairfield, New Jersey to Settling Defendant Cardean. Settling Defendant Cardean leased the premises to Settling Defendants Frameware and Profiles from 2002 until 2013. In March 2013, due to the high levels of PCBs inside the building, the New Jersey Department of Health, in consultation with the Agency for Toxic Substances and Disease Registry, recommended that the workers at the Site be relocated within four to six months. In July 2013, Settling Defendants Cardean, Frameware, and Profiles vacated the building and moved their businesses to another location.

D. Beginning in 2015, EPA performed a Remedial Investigation/Feasibility Study ("RI/FS") for Operable Unit 1 ("OU1") to determine the nature and extent of contamination in the soils at the Site. EPA determined that the soils at the Site were contaminated with PCBs and pesticides. On September 20, 2016, EPA issued a Record of Decision ("ROD") for OU1 that called for, among other things, the demolition of the contaminated building and the remediation of the contaminated debris and soil at the Site including three adjacent properties at an estimated cost of $18.1 million. EPA is currently designing the selected remedy for OU1. In addition, EPA has begun a RI/FS for OU2 to determine the nature and extent of contamination in the groundwater, surface water, and sediments at the Site. In performing response actions at the Site, EPA has incurred response costs and will incur additional response costs in the future.

E. The United States and the State allege that defendants ("Settling Defendants") are responsible parties pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and are jointly and severally liable for response costs incurred and to be incurred at the Site. The State also alleges that Settling Defendants are responsible under the Spill Act and are strictly, jointly and severally liable for cleanup and removal costs incurred and to be incurred by NJDEP at the Site.

F. The defendants that have entered into this Consent Decree do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint.

G. The United States has reviewed the Financial Information and Insurance Information submitted by Settling Defendant Unimatic to determine whether Settling Defendant Unimatic is financially able to pay response costs incurred and to be incurred at the Site. Based upon this Financial Information and Insurance Information, the United States has determined that Settling Defendant Unimatic has limited financial ability to pay for response costs incurred and to be incurred at the Site.

H. The United States, the State, and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1345 and 42 U.S.C. §§ 9606, 9607, and 9613(b) and also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2. This Consent Decree is binding upon the United States and the State, and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendants under this Consent Decree.

## IV. DEFINITIONS

3. Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

"Administrator" shall mean the Administrator of the New Jersey Spill Compensation Fund and any successor official or entity of the State of New Jersey.

"Affected Property" means all real property at the Site and any other real property, where EPA or NJDEP determines, at any time, that access or land, water, or other resource use restrictions are needed to implement response actions at the Site, including, but not limited to, the Cardean Property (defined below).

"Cardean Property" shall mean the real property, owned or controlled by Settling Defendant Cardean, located at 25 Sherwood Lane in Fairfield, Essex County, New Jersey (Block 2302, Lot 8 on the Tax Map of Fairfield Township, Essex County, New Jersey).

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the U.S. Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Financial Information" shall mean those financial documents identified in Appendix B.

"Insurance Information" shall mean those insurance documents identified in Appendix B.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Lien" shall mean the judgment lien to be executed and recorded pursuant to Paragraph 35.c of this Consent Decree.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NJDEP" shall mean the New Jersey Department of Environmental Protection, and any successor departments or agencies of the State of New Jersey.

"NJDEP Future Cleanup and Removal Costs" shall mean all costs, including direct and indirect costs and State Interest, NJDEP will incur after the Effective Date of the Consent Decree at the Site.

"NJDEP Natural Resource Damages" shall mean all claims arising from discharges at the Site that occurred prior to the Effective Date of this Consent Decree, and that are recoverable by NJDEP as natural resource damages for injuries to natural resources under the Spill Act; the New Jersey Water Pollution Control Act, N.J.S.A 58:10A-1 through -20; the Oil Pollution Act, 33 U.S.C.A. §§2701 through -2761; the Clean Water Act, 33 U.S.C.A. §§1251 through -1387; the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C.A. §§9601 through -9675; the Sanitary Landfill Act, or any other state or federal common law, statute, or regulation, and include:

a. The costs of assessing injury to natural resources, NJDEP's Office of Natural Resource Restoration's oversight costs determined pursuant to N.J.A.C. 7:26C-4.7, attorney's fees, consultants and experts' fees, other litigation costs, and interest; and

b. Compensation for the lost value of, injury to, or destruction of natural resources.

"NJDEP Natural Resource Damages" do not include:

a. Compliance with any statutory or regulatory requirement that is not within the definition of Natural Resource Damages;

b. Requirements to clean up any contamination as a result of discharges at the Site; or

c. Any obligation to pay NJDEP's oversight costs determined pursuant to N.J.A.C. 7:26C-4.7.

"NJDEP Past Cleanup and Removal Costs" shall mean all costs, including direct and indirect costs and State Interest, NJDEP incurred on or before the Effective Date of the Consent Decree at the Site.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the New Jersey Department of Environmental Protection and Administrator of the Spill Compensation Fund, and the Settling Defendants.

"Plaintiffs" shall mean the United States and New Jersey Department of Environmental Protection and Administrator of the Spill Compensation Fund.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Seller's Escrow" shall mean funds controlled by Settling Defendant Unimatic as referenced in the Certification attached hereto in Appendix B.

"Settling Defendant Cardean" shall mean Cardean, LLC.

"Settling Defendant Frameware" shall mean Frameware, Inc.

"Settling Defendant Profiles" shall mean Profiles, LLC.

"Settling Defendant Unimatic" shall mean Unimatic Manufacturing Corporation.

"Settling Defendants" shall mean Unimatic Manufacturing Corporation, Cardean, LLC, Frameware, Inc., and Profiles, LLC.

"Site" shall mean the Unimatic Manufacturing Corporation Superfund Site, encompassing approximately 1.23 acres, located at 25 Sherwood Lane in Fairfield, Essex County, New Jersey, (Block 2302, Lot 8 on the Tax Map of Fairfield Township, Essex County, New Jersey) and generally shown on the map included in Appendix A.

"State" shall mean the State of New Jersey.

"State Interest" shall mean the interest rate established by R. 4:42 of the then-current edition of the New Jersey Court Rules.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"Unimatic Manufacturing Corporation Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

## V. STATEMENT OF PURPOSE

4. The mutual objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment, for Settling Defendant Unimatic to make cash payments to the United States and NJDEP, and for Settling Defendant Cardean to give the United States a first priority secured interest in the Cardean Property, to sell the Cardean Property and pay the proceeds to the United States and the State, and for Settling Defendant Cardean to make a cash payment to NJDEP upon resolution of its separate pending litigation in Superior Court in New Jersey – Essex County, to implement land use restrictions, and to resolve Settling Defendants' alleged civil liability for the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607 and the Spill Act, as provided in the Covenants by Plaintiffs in

Section VIII, and subject to the Reservations of Rights by United States and the State in Section IX.

## VI. PAYMENT OF RESPONSE COSTS

5. **Payments of Response Costs by Settling Defendant Unimatic**.

a. Within 30 days after the Effective Date, following the procedures set forth in Paragraphs 6 and 10, Settling Defendant Unimatic shall pay to the United States and the NJDEP a total of $3,499,198.65, and if timely paid, shall include no Interest. The amounts owing to each plaintiff are as follows:

(1) $3,149,278.78 shall be paid to the United States; and

(2) $349,919.87 shall be paid to the NJDEP.

b. Within 180 days after the Effective Date, Settling Defendant Unimatic shall pay 90% of all remaining assets in the Seller's Escrow to the United States and 10% to NJDEP. At the time of the payments, Settling Defendant Unimatic shall submit a final accounting of the Seller's Escrow to EPA and NJDEP.

6. **Payment Instructions.**

a. **Instructions for Payment to United States.** Settling Defendant Unimatic and Settling Defendant Cardean shall make payment by Fedwire Electronic Funds Transfer EFT to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendant Unimatic by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the District of New Jersey after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS) number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.

The FLU will provide the payment instructions to:

Frances B. Stella, Esq.
Brach Eichler LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
973-403-3149
fstella@bracheichler.com

and

Stanley B. Green, Esq.
Strauch, Green & Mistretta, P.C.
911 Paverstone Drive, Suite F
Raleigh, North Carolina 27615
919-278-7453
sgreen@sgandm.com

Settling Defendant Unimatic and Settling Defendant Cardean may change the individual to receive payment instructions on its behalf by providing written notice to DOJ and EPA of such change in accordance with Section XV (Notices and Submissions).

b. **Instructions for Payment to NJDEP.** The NJDEP shall generate an invoice for payment of $349,919.87. Settling Defendant Unimatic shall pay the State within 30 days of receipt of the invoice by check made payable to "Treasurer, State of New Jersey." Payment, with invoice stub, shall be mailed to the address referenced on the invoice. In addition, Settling Defendant Unimatic shall mail or otherwise deliver a copy of the payment and invoice to:

Section Chief, Environmental Enforcement and Environmental Justice Section
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

and

David E. Haymes, Director
Division of Enforcement, Technical and Financial Support
Site Remediation and Waste Management Program
Department of Environmental Protection
401 E. State Street– Mail Code 401-06E
Trenton, NJ 08625.

7. **Deposit of Payment**. The total amounts to be paid to the United States pursuant to Paragraph 5 (Payments of Response Costs) and Paragraph 9.g (Payment of Net Proceeds of Sale of Property) shall be deposited by EPA in the Unimatic Manufacturing Corporation Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

8. **Notice of Payment**. At the time of payment, Settling Defendants Unimatic and Cardean shall send notice that payment has been made (a) to EPA in accordance with Section XV (Notices and Submissions), (b) to DOJ in accordance with Section XV; (c) to NJDEP in accordance with Section XV; and (d) to the EPA Cincinnati Finance Center (CFC) at:

**EPA CFC by email**: cinwd_acctsreceivable@epa.gov

**EPA CFC by regular mail**: EPA Cincinnati Finance Center
26 W. Martin Luther King Drive
Cincinnati, Ohio 45268

Such notice shall reference the CDCS Number, Site/Spill ID Number A21U, and DJ Number 90-11-3-11559.

**9. Payment of Net Proceeds of Sale of Cardean Property**

a. **Appraisal of Cardean Property**. Within 30 days after receipt of a written request from EPA, Settling Defendant Cardean shall submit to EPA and NJDEP the names of one or more appraisers. The appraisers identified shall be certified to meet the Uniform Standards of Professional Appraisal Practice by a nationally recognized organization of professional real estate appraisers. EPA and NJDEP may, within 30 days thereafter, disapprove the proposed appraiser(s). If all proposed appraisers are disapproved by EPA or NJDEP, Settling Defendant Cardean shall, within 15 days after such disapproval, submit names of additional appraisers, which shall be subject to EPA's and NJDEP's disapproval as provided above. Any appraisers not disapproved by EPA or NJDEP shall be deemed to be approved. Settling Defendant Cardean shall, within 60 days after the deadline for EPA's and NJDEP's disapproval of the proposed appraisers, obtain an appraisal of the Cardean Property. The appraisal shall be performed by any appraiser deemed to be approved. Settling Defendant Cardean shall be responsible for all appraisal fees. Settling Defendant Cardean shall submit a copy of the appraisal to EPA and NJDEP within 30 days after receiving the appraisal. EPA and NJDEP reserve the right to require Settling Defendant Cardean to conduct another appraisal if EPA and NJDEP are not satisfied with the initial appraisal. If the Cardean Property is not sold within one year of the date of the appraisal, and if EPA and NJDEP so request, Settling Defendant Cardean shall obtain a new appraisal of the Cardean Property, in accordance with this Paragraph.

b. **Maintenance of the Cardean Property**. Until the Cardean Property is sold, Settling Defendant Cardean shall, at its own expense: (i) maintain and make necessary repairs to the Cardean Property, such as mowing the grass and controlling any overgrowth of shrubs, trees, and weeds at the Cardean Property, however this sub-paragraph does not bind Settling Defendant Cardean to make repairs to structures on the Cardean Property or repair driveways or fencing or conduct any remedial activities; (ii) keep the Cardean Property insured against loss from casualty and liability; (iii) timely pay or cause to be paid all real property taxes; and (iv) timely pay all water and sewer bills regarding the Cardean Property, except to the extent those bills are increased or generated as a result of EPA's remedial activities.

c. **Marketing of the Cardean Property**. Within 30 days after the date of the appraisal, Settling Defendant Cardean shall use best efforts to sell the Cardean Property. "Best efforts" for purposes of this Paragraph includes: (i) entering into a listing agreement, for the purpose of marketing and selling the property, with a real estate broker, dealer, or agent licensed in the State of New Jersey who customarily deals with real property similar to the Cardean Property; (ii) advertising the Cardean Property for sale in appropriate publications; (iii) listing the Cardean Property with appropriate real estate listing services; (iv) maintaining the Cardean Property in a condition suitable for showing to prospective buyers; and (v) providing access to the Cardean Property, at reasonable times, to real estate brokers, dealers or agents and prospective buyers.

d. Settling Defendant Cardean shall submit to EPA and NJDEP reports regarding Settling Defendant Cardean's efforts to market and maintain the Cardean Property. The first such report shall be due three months after commencement of efforts to sell the Cardean Property, and successive reports shall be due quarterly thereafter.

e. If the proposed contract for the sale of the Cardean Property provides for Settling Defendant Cardean to receive all cash, is for at least 90% of the most current appraised value of the Property, and provides for the property sale to occur within 60 days after the date of execution of the sales contract, then Settling Defendant Cardean may execute the contract without EPA's or NJDEP's prior written approval. Otherwise, Settling Defendant Cardean shall provide to EPA and NJDEP a copy of the proposed Cardean Property sales contract, and must obtain EPA's and NJDEP's written approval before executing the contract. Settling Defendant Cardean shall provide to EPA and NJDEP a copy of the executed contract within 7 days after signing the contract.

f. Settling Defendant Cardean shall submit to EPA and NJDEP for approval, at least 10 days prior to the date of the sale of the Cardean Property, a notice of the sale, Settling Defendant Cardean's calculation of the net sales proceeds, and all documentation regarding the values used in the calculation, including: (i) copies of all documents to be executed regarding the sale; (ii) documentation of the amounts of closing costs to be paid; (iii) documentation of any broker's fees regarding the sale; and (iv) documentation of the amounts of state and/or municipal transfer taxes to be paid regarding the sale of the Cardean Property. Settling Defendant Cardean may request that EPA and NJDEP approve the calculation of net sales proceeds prior to the sale. In that event, EPA's and NJDEP's approval shall be binding in any subsequent dispute between the United States, the State and Settling Defendant Cardean regarding whether Settling Defendant Cardean has complied with Paragraph 9g.

g. At the time of the sale, Settling Defendant Cardean shall pay to the United States the net sales proceeds of the sale of the Property, according to the payment instructions included in Paragraph 6 and with notice in accordance with Paragraph 8. "Net sales proceeds" shall mean, for purposes of this Paragraph, all consideration received by Settling Defendant Cardean from the sale of the Cardean Property, not including: (i) any reasonable closing costs paid regarding the sale; (ii) any reasonable broker's fees regarding the sale; and (iii) any state and/or municipal transfer taxes regarding the sale. Provided that the amount of "net sales proceeds" is acceptable, EPA shall arrange for the execution or delivery, at the time of the sale, of a release of the Lien filed regarding the Cardean Property pursuant to Paragraph 35.c.

h. In the event of a sale or other transfer of the Property or any portion thereof, Settling Defendant Cardean shall continue to be subject to all terms, conditions and benefits of this Consent Decree, except for Section XII (Property Requirements), to the extent it requires Settling Defendant Cardean to provide access to, or to abide by any land, water, or other resource use restrictions regarding the Cardean Property or portion thereof that was sold or transferred. Settling Defendant Cardean shall continue to be subject to the requirement to enforce any agreements, pursuant to Section XII, for the new owner to provide access to the Cardean Property or portion thereof that was sold and to abide by any land, water and other use restrictions.

10. **Cardean Payment to NJDEP from State Court Recoveries**. In the event Settling Defendant Cardean receives additional property damages in any amount, up to $200,000, from any and all parties, excluding Settling Defendant Unimatic, in the matter of Cardean, LLC, et al. v. Unimatic Manufacturing Corporation, et al., Superior Court of New Jersey, Law Division-Essex County, Docket No. L-5864-13, Settling Defendant Cardean shall promptly notify the State and EPA of the recovery at the address referenced in paragraph 46 below. The NJDEP shall generate an invoice for payment in the amount received by Cardean for property damages, up to $200,000. Cardean shall pay the State within 30 days of receipt of the invoice by check made payable to "Treasurer, State of New Jersey." Payment, with invoice stub, shall be mailed to the address referenced on the invoice. In addition, Settling Defendant Cardean shall mail or otherwise deliver a copy of the payment and invoice to:

Section Chief, Environmental Enforcement and Environmental Justice Section
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

and

David E. Haymes, Director
Division of Enforcement, Technical and Financial Support
Site Remediation and Waste Management Program
Department of Environmental Protection
401 E. State Street– Mail Code 401-06E
Trenton, NJ 08625.

11. Settling Defendant Unimatic shall pay to Settling Defendant Cardean the principal amount of $900,000. The payment shall be made within 30 days after the Effective Date and, if timely paid, shall include no Interest. Settling Defendant Unimatic shall pay by official bank check or electronic transfer and shall send the check or electronic transfer to Settling Defendant Cardean's attorney trust account with notice of electronic payment to:

Stanley B. Green, Esq.
Strauch, Green & Mistretta, P.C.
911 Paverstone Drive, Suite F
Raleigh, North Carolina 27615

12. Settling Defendant Cardean shall use the proceeds of the payment received from Settling Defendant Unimatic under the preceding Paragraph to pay off all mortgages, liens, and back taxes (including but not limited to those listed in Appendix C) on the Cardean Property within 30 days after receiving the payment from Settling Defendant Unimatic so that the title to the Cardean Property is free and clear of any encumbrances that would subordinate the United States' first priority lien on the Cardean Property.

13. **EPA/NJDEP Sharing of Monies Paid by Settling Defendants.** As part of EPA and NJDEP's cost sharing agreement for the Site, EPA and NJDEP will share any monies received from Settling Defendants pursuant to Paragraphs 5, 9, and 10 on a 90/10 basis with EPA receiving 90% and NJDEP receiving 10%. Within sixty (60) days after the sale of the Cardean

Property pursuant to Paragraph 9 of the Consent Decree, EPA and the State will reconcile any recoveries received pursuant to Paragraphs 9 and 10 of the Consent Decree and, if necessary, make any payments or provide any credits to each other, as the case may be, so that EPA's share of those monies is 90% and NJDEP's share of those monies is 10%.

## VII. FAILURE TO COMPLY WITH CONSENT DECREE

14. **Interest on Payments and Accelerated Payments**. If Settling Defendant Unimatic fails to make the payment required by Paragraph 5 (Payments of Response Costs) by the required due date, Interest shall accrue on the unpaid balance from the Effective Date through the date of payment. If Settling Defendant Cardean fails to make the payment required by Paragraph 9 (Payment of Net Proceeds of Sale of Property) by the required due date under Paragraph 9.g Interest shall continue to accrue on the unpaid balance from the date payment was due through the date of payment.

15. **Stipulated Penalty**

a. If any amounts due to Plaintiffs under Paragraphs 5 (Payments of Response Costs) are not paid by the required date, Settling Defendant Unimatic shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 14 (Interest on Payments), $5000 per violation per day that such payment is late.

b. If Settling Defendant Cardean fails to use best efforts to sell the Cardean Property in accordance with Paragraph 9 above (Payment of Net Proceeds of Sale of Property), make payment in accordance with Paragraph 10 or fails to perform any action required by Paragraph 35, Settling Defendant Cardean shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, $5000 per violation per day.

c. Settling Defendant shall pay stipulated penalties to the United States and the State within 30 days of a written demand by either Plaintiff. Settling Defendant shall pay 50 percent of the total stipulated penalty amount due to EPA and 50 percent to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York, NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency"

Each payment shall reference the CDCS Number, Site/Spill ID Number A21U, and DJ Number 90-11-3-11559.

All payments made to the State under this Paragraph shall be identified as "stipulated penalties" and shall be made by 30 days of receipt of the invoice by check made payable to "Treasurer,

State of New Jersey." Payment, with invoice stub, shall be mailed to the address referenced on the invoice. In addition, Settling Defendant shall mail or otherwise deliver a copy of the payment and invoice to:

Section Chief, Environmental Enforcement and Environmental Justice Section
Department of Law and Public Safety, Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

and

David E. Haymes, Director
Division of Enforcement, Technical and Financial Support
Site Remediation and Waste Management Program
Department of Environmental Protection
401 E. State Street– Mail Code 401-06E
Trenton, NJ 08625.

d. At the time of payment, the Settling Defendant making payment shall send notice that payment has been made in accordance with Paragraph 8 (Notice of Payment).

e. Penalties shall accrue as provided in this Paragraph regardless of whether EPA or the State has notified the Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

16. If the United States or the State brings an action to enforce this Consent Decree, the Settling Defendant that is the subject of the action shall reimburse the United States and the State for all costs of such action, including, but not limited to, costs of attorney time.

17. Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

18. Notwithstanding any other provision of this Section, the United States or NJDEP may, in their unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendants from payment as required by Section VI (Payments of Response Costs) or from performance of any other requirements of this Consent Decree.

## VIII. COVENANTS BY PLAINTIFFS

19. Except as specifically provided in Section IX (Reservation of Rights by United States and the State), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), regarding the Site. With respect to present and future liability, these covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory

performance by Settling Defendants of their obligations under this Consent Decree. These covenants are also conditioned upon: the veracity and completeness of the Financial Information and the Insurance Information provided to EPA by Settling Defendant Unimatic and the certifications made by Settling Defendants in Paragraphs 44 and 45. These covenants extend only to Settling Defendants and do not extend to any other person.

20. In consideration of the payments Settling Defendants are making pursuant to paragraphs 5 and 10 above, and except as specifically provided in Section IX (Reservation of Rights by United States and the State), below, NJDEP covenants not to sue or take administrative action against the Settling Defendants for reimbursement of NJDEP Past Cleanup and Removal Costs or NJDEP Future Cleanup and Removal Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants extend only to the Settling Defendants and do not extend to any other person.

## IX. RESERVATION OF RIGHTS BY UNITED STATES AND THE STATE

21. The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Paragraphs 19 and 20 (Covenants by Plaintiffs). Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendants with respect to:

a. liability for failure of Settling Defendants to meet a requirement of this Consent Decree;

b. criminal liability;

c. liability for damages for injury to, destruction of, or loss of natural resources of the United States, and for the costs of any natural resource damage assessments performed by the United States;

d. liability based on the ownership or operation of the Site by Settling Defendants when such ownership or operation commences after signature of this Consent Decree by Settling Defendants;

e. liability based on Settling Defendants' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendants;

f. liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site;

g. liability for NJDEP Natural Resource Damages;

h. liability for failure to comply with applicable State law and regulations subsequent to the Site being delisted by the EPA from the National Priorities List, including, but not limited to, the Site Remediation Reform Act, N.J.S.A. 58:10C-1 to -29, and the

Administrative Requirements for the Remediation of Contaminated Sites, N.J.A.C. 7:26C, and the Technical Requirements for Site Remediation, N.J.A.C. 7:26E.

22. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendants Cardean, Frameware, and Profiles with respect to:

a. liability as a result of failure to exercise due care with respect to hazardous substances at the Site;

b. liability resulting from exacerbation of the release or threat of release of hazardous substances from the Site;

23. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant Unimatic, or the financial, insurance, or indemnity certification made by Settling Defendant Unimatic in Paragraph 44 and 45, is false or, in any material respect, inaccurate.

## X. COVENANTS BY SETTLING DEFENDANTS

24. Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to the Site and this Consent Decree, including but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any direct or indirect claim for reimbursement from the Spill Compensation Fund (“Spill Fund”) within the meaning of N.J.S.A. 58:10-23.11k or N.J.A.C. 7:11 or the Sanitary Landfill Contingency Fund (Sanitary Landfill Fund”) within the meaning of N.J.S.A. 13:1E-107 or N.J.A.C. 7:1I concerning the Site;

c. any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the New Jersey State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

d. any claim pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), the Spill Act, or other state laws, relating to the Site.

25. Except as provided in Paragraph 27 (claims against other PRPs) and Paragraph 32 (Res Judicata and other Defenses), these covenants shall not apply in the event the United States or the State brings a cause of action or issues an order pursuant to any of the reservations set forth in Section IX (Reservations of Rights by United States and the State), other than in Paragraph 21.a (liability for failure to meet a requirement of the Consent Decree) or 21.b (criminal liability), but only to the extent that Settling Defendants’ claims arise from the same

response action or response costs that the United States or the State is seeking pursuant to the applicable reservation.

26. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d). Additionally, nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim against the Spill Fund, within the meaning of N.J.S.A. 58:10-23.11k or N.J.A.C. 7:1J, or the Sanitary Landfill Fund, within the meaning of N.J.S.A. 13:1E-107 or N.J.A.C. 7:11.

27. Settling Defendants agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA and the Spill Act) that they may have for response costs relating to the Site against each other or any other person who is a potentially responsible party under CERCLA and the Spill Act at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendants may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendants.

## XI. EFFECT OF SETTLEMENT/CONTRIBUTION

28. Except as provided in Paragraph 27 (claims against other PRPs), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section X (Covenants by Settling Defendants), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2). Additionally, nothing in this Consent Decree diminishes the right of NJDEP, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. §9613(f)(2)-(3), or Section 8 of the Spill Act, N.J.S.A. 58:10-23.11g., to pursue such persons to obtain additional response costs/cleanup and removal costs and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2) or Section 7a.(2)(b) of the Spill Act, N.J.S.A. 58:10-23.11f.a.(2)(b).

29. The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement pursuant to which Settling Defendants have, as of the Effective Date, resolved their liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and NJDEP within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. §9613(f)(2) and Section 7a.(2)(b) of the Spill Act, N.J.S.A. 58:10-23.11f.a.(2)(b) and are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA and N.J.S.A. 58:10-23.11f.a.(2)(b), or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person; the NJDEP Past Cleanup and Removal Costs, and

NJDEP Future Cleanup and Removal Costs; provided, however, that if the United States exercises rights under the reservations in Section IX (Reservations of Rights by United States), other than in Paragraphs 21.a (liability for failure to meet a requirement of Consent Decree) or 21.b (criminal liability), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

30. The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States and NJDEP in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Defendants have, as of the Effective Date, resolved their liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B) and NJDEP within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B) and Section 7f.a.(2)(b) of the Spill Act.

31. Settling Defendants shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA and DOJ and the State in writing no later than 60 days prior to the initiation of such suit or claim. Settling Defendants also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ and the State in writing within 10 days after service of the complaint or claim upon it. In addition, Settling Defendants shall notify EPA and DOJ and the State within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

32. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, or NJDEP for injunctive relief, recovery of cleanup and removal costs or other appropriate relief relating to the Site Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or NJDEP in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiffs set forth in Section VIII.

## XII. PROPERTY REQUIREMENTS

33. **Agreements Regarding Access and Non-Interference**. Settling Defendants Cardean, Frameware, and Profiles shall, with respect to the Affected Property:

a. Provide the United States, the State, and their representatives, contractors, and subcontractors with access at all reasonable times to the Affected Property to conduct any activity relating to response actions at the Site including the following activities:

(1) Verifying any data or information submitted to the United States or the State;

(2) Conducting investigations regarding contamination at or near the Site;

(3) Obtaining samples;

(4) Assessing the need for, planning, implementing, or monitoring response actions;

(5) Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XIII (Access to Information);

(6) Assessing Settling Defendant and any Performing Party's compliance with the Consent Decree;

(7) Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, under the Consent Decree; and

(8) Implementing, monitoring, maintaining, reporting on, and enforcing any institutional controls or any land, water, or other resource use restrictions regarding the Affected Property.

b. Refrain from using the Affected Property in any manner that EPA or NJDEP determines will (i) pose an unacceptable risk to human health or to the environment due to exposure to hazardous substances or (ii) interfere with or adversely affect the implementation, integrity, or protectiveness of response actions at the Site, including the following restrictions:

(1) Prohibiting any activities which could interfere with response actions at the Site;

(2) Prohibiting use of contaminated groundwater;

(3) Prohibiting any activities which could result in exposure to contaminants in subsurface soils and groundwater;

(4) Ensuring that any new structures on the Affected Property will not be constructed in a manner which could interfere with response actions at the Site; and

(5) Ensuring that any new structures on the Affected Property will be constructed in a manner which will minimize potential risk of inhalation of contaminants.

34. Within 30 days after the Effective Date, Settling Defendant Cardean shall record in the Essex County, New Jersey Office of Register of Deeds and Mortgages a deed notice in a form acceptable to and approved by EPA and the State (similar to the sample notice attached as Appendix D) to restrict the use of the Affected Property to non-residential. The deed notice shall be enforceable by EPA and the State. If EPA determines in a decision document prepared in accordance with the NCP that any additional institutional controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are needed regarding the Affected Property, Settling Defendant Cardean shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such institutional controls.

35. **Notice to Successors-in-Title/First Priority Lien**

a. Settling Defendant Cardean shall, within 15 days after the Effective Date, submit for EPA approval a notice to be filed regarding the Cardean Property in the Essex County, New Jersey Office of Register of Deeds and Mortgages. The notice must: (1) include a proper legal description of the Cardean Property; (2) provide notice to all successors-in-title: (i) that the Cardean Property is part of, or related to, the Site; (ii) that EPA performed a response action for the Site; and (3) identify the document requiring implementation of the response action, including, if applicable, the name and civil action or docket number of the matter. Settling Defendant Cardean shall record the notice within 10 days after EPA's approval of the notice and submit to EPA, within 10 days thereafter, a certified copy of the recorded notice.

b. Settling Defendant Cardean shall, prior to entering into a contract to Transfer the Cardean Property, or 60 days prior to transferring the Cardean Property, whichever is earlier:

(1) Notify the proposed transferee that EPA performed a response action regarding the Site; and

(2) Notify EPA and the State of the name and address of the proposed transferee and provide EPA and the State with a copy of the above notice that it provided to the proposed transferee.

c. The United States shall have a first priority lien in the amount of its total response costs for the Site (which, as of December 31, 2019, amount to $8,744,500.32) on the Cardean Property. Settling Defendant Cardean shall, within 30 days after the Effective Date, file the necessary documentation substantially in the form attached as Appendix E to ensure that the United States has a first priority lien on the Cardean Property (the "Lien"). The necessary instruments for this security will be shared with and approved by the United States prior to filing. Settling Defendants shall not object to the Lien. The Lien shall be satisfied upon sale of the Cardean Property.

d. In order to effectuate the filing of the first priority lien of the United States as set forth in paragraph 35.c. above, the State agrees that, within 30 days after the Effective Date, it will execute and file a warrant of satisfaction with the Superior Court of New Jersey for DEP's lien, which was filed on or about June 17, 2018, and bears Docket No. DJ-096295-18.

36. In the event of any Transfer of the Affected Property, unless the United States and State otherwise consent in writing, Settling Defendants Cardean, Frameware, and Profiles shall continue to comply with its obligations under the Consent Decree.

37. Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require institutional controls, including enforcement authorities related thereto, under CERCLA, RCRA, the Spill Act, and any other applicable federal or State statutes, rules or regulations.

## XIII. ACCESS TO INFORMATION

38. Settling Defendants shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents and

other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Site.

39. **Privileged and Protected Claims**

a. Settling Defendants may assert that all or part of a Record is privileged or protected as provided under federal and/or State law, provided it complies with Paragraph 39.b, and except as provided in Paragraph 39.c.

b. If a Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, the Settling Defendant shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected information only. Settling Defendants shall retain all Records that they claim to be privileged or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendants' favor.

c. A Settling Defendant may make no claim of privilege or protection regarding:

(1) any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

(2) the portion of any Record that the Settling Defendant is required to create or generate pursuant to this Consent Decree.

40. **Business Confidential Claims**. Settling Defendants may assert that all or part of a Record submitted to Plaintiffs under this Section or Section XIV (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Settling Defendants shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Settling Defendants assert a business confidentiality claim. Records that Settling Defendants claim to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

41. Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, the Spill Act and any other applicable statutes or regulations.

## XIV. RETENTION OF RECORDS

42. Until 10 years after the Effective Date, each Settling Defendant shall preserve and retain all non-identical copies of Records now in its possession or control, or that come into its possession or control, that relate in any manner to its liability under CERCLA or the Spill Act with respect to the Site, provided, however, that if a Settling Defendant is potentially liable as an owner or operator of the Site, the Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA or the Spill Act with respect to the Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

43. After the conclusion of the record retention period, Settling Defendants shall notify EPA and DOJ and the State at least 90 days prior to the destruction of any such Records, and, upon request by EPA or DOJ or the State, except as provided in Paragraph 39 (Privileged and Protected Claims), Settling Defendants shall deliver any such Records to EPA or the State.

44. Each Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a. not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State, and that it has fully complied with any and all EPA and State requests for information regarding the Site and Settling Defendants' financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and State law; and

b. fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

45. Settling Defendant Unimatic certifies that it submitted to EPA Financial Information (listed in Appendix B) that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendant Unimatic executes this Consent Decree.

## XV. NOTICES AND SUBMISSIONS

46. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

**As to DOJ by email**: eescasemanagement.enrd@usdoj.gov

**As to DOJ by regular mail**:
EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-3-11559

**As to EPA**:
Office of Regional Counsel
New Jersey Superfund Branch
U.S. Environmental Protection Agency
290 Broadway, 17th Floor
New York, New York 10007

Attention: Unimatic Manufacturing Corporation Superfund Site Attorney

**As to the State**:
David E. Haymes, Director
Division of Enforcement, Technical and Financial Support
Site Remediation and Waste Management Program
Department of Environmental Protection
401 E. State Street
Trenton, NJ 08625
David.Haymes@dep.nj.gov

with a copy to:
A. Paul Stofa, Deputy Attorney General
Division of Law
Department of Law & Public Safety
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093
paul.stofa@law.njoag.gov

**As to Setting Defendant Unimatic:**
Frances B. Stella, Esq.
Brach Eichler LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
973-403-3149
fstella@bracheichler.com

**As to Settling Defendants Cardean, Frameware, and Profiles:**
Stanley B. Green, Esq.
Strauch, Green & Mistretta, P.C.
911 Paverstone Drive, Suite F
Raleigh, North Carolina 27615
sgreen@sgandm.com

## XVI. RETENTION OF JURISDICTION

47. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVII. INTEGRATION/APPENDICES

48. This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the Site.

"Appendix B" is the Financial Information and Insurance Information submitted on February 24, 2014 to EPA by Settling Defendant Unimatic, as supplemented by certification, dated May 27, 2020.

"Appendix C" is a list of all mortgages, liens and back taxes on the Cardean Property.

"Appendix D" is a model deed notice to be filed by Settling Defendant Cardean.

"Appendix E" is the form of the Judgment Lien.

## XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

49. This Consent Decree shall be lodged with the Court for a period of at least 60 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

50. The NJDEP, in accordance with N.J.S.A. 58:10-23.11e.2, shall arrange for written notice of the Consent Decree to all other potentially responsible parties of whom the NJDEP had notice as of the date NJDEP published notice of the proposed settlement in this matter in the New Jersey Register. NJDEP shall publish notice of this Consent Decree in the New Jersey Register and on NJDEP's website for public comment for a period of 60 days. In accordance with N.J.S.A. 58:10-23.11e.2, such notice shall include the following information: a) the caption of this case; b) the name and location of the Unimatic Superfund Site; c) the names of the Settling Defendants; d) a summary of the terms of this Consent Decree; and e) that there are 60 days to comment on the proposed Consent Decree.

51. NJDEP reserves the right to withdraw or withhold its consent to this Consent Decree if NJDEP receives information that discloses facts or considerations that indicate to NJDEP in its sole discretion, that the Consent Decree is inappropriate, improper, or inadequate.

52. If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XIX. SIGNATORIES/SERVICE

53. Each undersigned representative of Settling Defendants and the Deputy Chief, U.S. Department of Justice, Environment and Natural Resources Division, Environmental Enforcement Section, the NJDEP and Deputy Attorney General for the Department of Law and Public Safety certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

54. Settling Defendants agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States or NJDEP has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

55. Each Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX. FINAL JUDGMENT

56. Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the State, and Settling Defendants. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _______, 20__.

____________________________________
United States District Judge

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR THE UNITED STATES OF AMERICA**:

Jonathan D. Brightbill
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

November 27, 2020
Dated

/s/Katherine L. Matthews

Katherine L. Matthews
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th St., Suite 370
Denver, CO 80202

/s/ Craig Carpenito

Craig Carpenito
United States Attorney
District of New Jersey

/s/ Allan Urgent

Allan Urgent
Assistant United States Attorney
District of New Jersey
970 Broad Street
Newark, New Jersey 07102

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

Evangelista, Pat Digitally signed by Evangelista, Pat Date: 2020.09.24 17:42:33 -04'00'

Pat Evangelista
Director, Superfund and Emergency Management Division, Region 2
U.S. Environmental Protection Agency
290 Broadway, 19th Floor
New York, New York 10007

GERARD BURKE Digitally signed by GERARD BURKE Date: 2020.09.24 09:39:02 -04'00'

Gerard Burke
Assistant Regional Counsel
U.S. Environmental Protection Agency
Office of Regional Counsel
290 Broadway, 17th Floor
New York, New York 10007

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND:**

09/18/2020
Dated

David E. Haymes
Administrator, New Jersey Spill Compensation Fund
Director, Site Remediation and Waste Management Program
Division of Enforcement, Technical and Financial Support
401 E. State Street
Trenton, NJ 08625

Date

Ray Bukowski
Assistant Commissioner
Natural and Historic Resources

09/18/2020
Dated

Carley A. Doyle
Deputy Attorney General
Department of Law & Public Safety
Division of Law
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND:**

_______________
Dated

_______________________________
David E. Haymes
Administrator, New Jersey Spill Compensation Fund
Director, Site Remediation and Waste Management Program
Division of Enforcement, Technical and Financial Support
401 E. State Street
Trenton, NJ 08625

9/21/20
_______________
Date

RBukowski
_______________________________
Ray Bukowski
Assistant Commissioner
Natural and Historic Resources

09/18/2020
_______________
Dated

_______________________________
Carley A. Doyle
Deputy Attorney General
Department of Law & Public Safety
Division of Law
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR** ________________________________:
Unimatic Manufacturing Corporation

9-15-2020
Date

[signature]
Name (print): Peter Bottoni
Title: President
Address: 35 Normandy Drive, Parsippany, New Jersey 07054

Agent Authorized to Accept Service on Behalf of Above-signed Party:

| | |
|---|---|
| Name (print): | Frances B. Stella, Esq. |
| Title: | Member |
| Company: | Brach Eichler, L.L.C. |
| Address: | 101 Eisenhower Parkway<br>Roseland, New Jersey 07068 |
| Phone: | (973) 403-3149 |
| email: | fstella@bracheichler.com |

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR CARDEAN, LLC:**

9/16/20
Date

Carmen DeLuccia
Name: Carmen DeLuccia
Title: President
Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Stanley B. Green, Esq.
Title: V.P. and Owner
Company: Straub Green & Mistretta, P.C.
Address: 1752 Heritage Office Center, Wake Forest, North Carolina 27587
Phone: 704 564 9878
email: sgreen@sgandm.com

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR FRAMEWARE, INC.:**

9/14/2020
Date

Name: Dean DeLuccia
Title: President
Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Stanley B. Green, Esq.
Title: V.P. and Owner
Company: Strauch Green & Mistretta, P.C.
Address: 1752 Heritage Office Center, Wake Forest, North Carolina 27587
Phone: 704 564 9878
email: sgreen@sgandm.com

Signature Page for Consent Decree Regarding the Unimatic Manufacturing Corporation Superfund Site

**FOR PROFILES, LLC:**

9/16/2020
Date

[signature]
Name: Dean DeLuccia
Title: President
Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Stanley B. Green, Esq.
Title: V.P. and Owner
Company: Strauch Green & Mistretta, P.C.
Address: 1752 Heritage Office Center, Wake Forest North Carolina, 27587
Phone: 704 564 9878
email: sgreen@sgandm.com



Unimatic Manufacturing Corporation Superfund Site
New York
Pennsylvania
New Jersey
Maryland
Delaware
Atlantic Ocean
US 46 E
US 46 W
Little Falls Rd
Deepavaal Brook
Passaic Ave
Sperry Rd
Daniel Rd E
Eldridge Rd
New Dutch Ln
Pier Ln
Martins Ln
Toll Terrace
Harding Dr
Orlando Dr
Pier Ln W
Kingsbridge Rd
Sherwood Ln
Oconnor Dr
Carlos Dr
Glen Ave
Maplewood Ave
Colt St
Summit Ave
Van Ness Ave
Dey Ave
Shire Ave
Seely St
Forest Pl
Passaic River
Essex County Airport
N
W
E
S
CDM Smith
Legend
Unimatic Property Boundary
0
500
1,000
2,000
Feet
Figure 1-1
Site Location Map
Unimatic Manufacturing Corporation Superfund Site
Fairfield, Essex County, New Jersey
Document Path: F:\Unimatic\GIS\MXD\RIWP\Site Location Map_rev.mxd


Appendix A

BRACH | EICHLER LLC

Frances B. Stella
Direct Dial: 973-403-3149
Direct Fax: 973-618-5549
E-mail: fstella@bracheichler.com

February 24, 2014

**VIA OVERNIGHT DELIVERY**

Ms. Bonnie Hriczko
Enforcement Specialist
Response and Prevention Branch
US Environmental Protection Agency
2890 Woodbridge Avenue
Bldg. 205 (MS-211)
Edison, New Jersey 08837

Re: Response to Notice of Potential Liability and Demand for Reimbursement of Costs Expended at the Unimatic Manufacturing Corporation Site at 25 Sherwood Lane, Fairfield, Essex County, New Jersey

Dear Ms. Hriczko:

This firm represents Unimatic Manufacturing Corporation (" Unimatic"). We are in receipt of a Notice of Potential Liability and Demand for Reimbursement of Costs Expended at the Unimatic Manufacturing Corporation Site at 25 Sherwood Lane, Fairfield, Essex County, New Jersey. While we expressly deny any and all liability for any contamination at 25 Sherwood Lane, Fairfield, New Jersey (the "Property") under Section 107(a) of CERCLA, Unimatic is unable to reimburse the United States Environmental Protection Agency ("USEPA") for the costs enumerated on Attachment 1 to the correspondence at this time.

Unimatic has not operated at the Property since 2001 and sold the Property in 2002. The two former owners of Unimatic are now deceased. Unimatic is currently involved in a lawsuit by the current owners of the Property seeking reimbursement for costs. On July 8, 2013 Unimatic gave $85,068.65 to Framewear, monies that had been held in a Trust as part of the sale of the Property. Additionally, Unimatic recently provided $153,890.34 to the New Jersey Department of Environmental Protection ("NJDEP") pursuant to a Remediation Trust Fund Agreement. The only remaining Unimatic asset is a Trust containing $334,275.30.

Enclosed please find the completed Business Organization Ability to Pay Claim Financial Data Request Form along with Unimatic's tax returns for 2008 – 2011. There is no return for 2012 since there were no taxes owed.

Very truly yours,

Frances B. Stella
For BRACH EICHLER L.L.C.

FBS:ab
Enclosures

**BUSINESS ORGANIZATION**
**ABILITY TO PAY CLAIM**
Financial Data Request Form

This form requests information regarding your financial status. The data will be used to evaluate your ability to pay for environmental clean-up or penalties. If there is not enough space for your answers, please use additional sheets of paper. Note that we may request further documentation of any of your responses. We welcome any other information you wish to provide supporting your case, particularly, if you feel your situation is not adequately described through the information requested here. If a particular question does not apply to your business, please indicate that it does not apply and give the reason. Failure to answer all the questions clearly and completely may result in denial of your claim of inability to pay.

**Certification**

Under penalties of perjury, I declare that this financial statement submitted by me as a responsible officer of the organization is a true, correct, and complete statement of all organization income and assets, real and personal, whether held in the company name or otherwise to the best of my knowledge and belief. I further understand that I will be subject to prosecution by the United States Government to the fullest extent possible under the law should I provide any information that is not true, correct, and complete to the best of my knowledge.

Peter A. Bottoni (signature)
Signature

2-14-14
Date

Peter Bottoni
Name (printed or typed)

PETER A. BOTTONI, PRESIDENT
President

**Financial Data Request Form**

(Use Additional Sheets Where Needed)

1. Business Name: Unimatic Manufacturing Corp. For Profit _X_ Not for Profit ___

2. Business Address: c/o David J. Ritter, Esq., 101 Eisenhower Parkway Roseland, New Jersey 07068

3. Foreign _______ Domestic __X__

4. Legal Form of Business Organization during the last 5 years

   _____ Corporation

   __X_ Subchapter S Corporation

   _____ Partnership

   _____ Proprietorship

   _____ Trust

   _____ Other: ___________________

5. State of Incorporation _New Jersey_______ Date of Incorporation __1955______

6. Name of Registered Agent: ____David J. Riter, Esq., c/o Brach Eichler L.L.C.________

7. Address of Registered Agent: __101 Eisenhower Parkway__________________
   Street

   Roseland, New Jersey 07068
   City State Zip

   (973) 403-3117
   Phone

8. Name and address of principal stockholders and number of shares owned by each. (Ifmore than 8 shareholders, list only those with 5 percent or more stock ownership). If your business is a partnership, list all partners and ownership percentage.

Total outstanding shares: ___500______

| Name | Address | Shares |
|---|---|---|
| 1. Kathleen Smith | 17 Toms Point Lane, Lincoln Park, NJ 07035 | 116 2/3 |
| 2. Peter Bottoni | 35 Normandy Drive, Parsippany, NJ 07054 | 250 |
| 3. Richard W. Bottoni | | 66 2/3 |
| 4. H. Ronald Bottoni | | 66 2/3 |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |

9. A. Name and address of current, (and for previous 5 years), officers and number of shares held by each. For partnerships, list all partners for last 5 years.

| Name | Address | Shares | Term |
|---|---|---|---|
| Kathleen Smith | 17 Toms Point Lane, Lincoln Park, NJ 07035 | 116 2/3 | prior to 3-4/ 2012 |
| Peter Bottoni | 35 Normandy Drive, Parsippany, NJ 07054 | 250 | Since 3-4/2012 to current |
| Richard Bottoni and Robert Bottoni, both of whom are now deceased, were principal officers and directors during the time of operations. In corporate records, Richard is listed as President and Robert is listed as Secretary/Treasurer. | | | |
| | | | |

9. B. Name and address of current, (and for previous five years), members of board of directors and number of shares held by each.

| Name | Address | Shares | Term |
|---|---|---|---|
| Kathleen Smith | 17 Toms Point Lane, Lincoln Park, NJ 07035 | 116 2/3 | |
| Peter Bottoni | 35 Normandy Drive, Parsippany, NJ 07054 | 250 | |
| Richard and Robert Bottoni were the members of the Board of Directors. Upon their deaths, no formal election of the Board has occurred. Kathleen Smith and Peter Bottoni have functioned in this role. | | | |
| | | | |
| | | | |
| | | | |
| | | | |

10. Has this organization ever issued a prospectus for the sale of stock? Yes ____ No __X__
If yes, list date, number and type of shares for each prospectus during the last five years.

| Date | Number of Shares | Type of Shares |
|---|---|---|
| | | |
| | | |
| | | |

11. A. Registration on international, national or local stock exchange(s). Give details, including data of registration and/or de-listing.

1. N/A
2. 
3. 
4. 

11\. B. Total authorized shares for each type issued and present market value per share on each type of stock (or book value if not actively traded)

| Type of Shares | Total Shares | Book Value | Market Value |
|---|---|---|---|
| 1. Voting Common Stock | | Tax Returns | $-0- |
| 2. | | | |
| 3. | | | |
| 4. | | | |

C. Total outstanding shares of each type of stock currently being held as Treasury Stock.

None

D. Total outstanding shares of each type of stock.

NONE

E. Amount of bonded debt and principle bondholders.

NONE

12\. List states and municipalities to which taxes have been paid and/or are being paid. Describe nature and amount of such taxes, state most recent year of payments thereof and whether tax payments are current.

New Jersey – income taxes until 2012

Has this organization filed United States income tax returns during the last five years?
Yes __X__ No _____

To what I.R.S. Office(s) ____Cincinatti

What Years? __2008, 2009, 2010, 2011

Are Federal Taxes current? Yes __X__ No _____ Federal taxes are current, but the 2012 tax return is outstanding.

Provide **SIGNED** Federal income tax returns and **ALL** associated schedules for the five most recent tax years: See enclosed disk.

13. Name and address of:

A. Organization's Independent Certified Public Accountants

N/A

B. Organization's Attorney(s) presently and during the past five years.

Brach Eichler L.L.C.

William Friedman, Esq.

15. Has this organization filed Financial Forms with any organization or government entity? List name of organization or entity, date and type of Financial Form.

No financial statements have been prepared for the company in the last 10 years.

16. Does this organization have a Profit and Loss Statement and Balance Sheet for the five most recent fiscal years? NO

Submit one copy of each. (Audited documents are preferred.)

A. Assets

| | | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|
| Cash | $ | | | | | |
| Securities | $ | | | | | |
| Facilities | $ | | | | | |
| Depreciation | $ | | | | | |
| Equipment | $ | | | | | |
| Depreciation | $ | | | | | |
| Inventory | $ | | | | | |
| Accounts Receivable | $ | | | | | |
| Other – Trust Accounts | $ | 742,645.03 | 792,564.88 | 1,038,564.90 | 289,492.36 | 288,752.90 |
| TOTAL ASSETS | $ | 742,645.03 | 792,564.88 | 1,038,564.90 | 289,492.36 | 288,752.90 |

B. Liabilities and Stockholder's Equity

| | | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|
| Loans Principle | $ | | | | | |
| Monthly Payment | $ | | | | | |
| Mortgages Principle | $ | | | | | |
| Monthly Payment | $ | | | | | |
| Accounts Payable | $ | | | | | |
| Deferred Taxes | $ | | | | | |
| Insurance Premiums | $ | | | | | |
| Other | $ | Contingent environmental liabilities | | | | |
| **Stockholder's Equity** | | | | | | |
| Common Stock | $ | Presumed to be zero | | | | |
| Pain-in Capital | $ | | | | | |
| Retained Earnings | $ | | | | | |
| **TOTAL LIABILITIES & EQUITY** | $ | Unknown | Unknown | Unknown | Unknown | Unknown |

17. Loans Payable: N/A

a.

| Owed to: | Purpose: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

b.

| Owed to: | Purpose: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

c.

| Owed to: | Purpose: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

d.

| Owed to: | Purpose: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

18. Mortgages Payable: N/A

a.

| Owed to: | Address of Property: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

b.

| Owed to: | Address of Property: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

c.

| Owed to: | Address of Property: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

d.

| Owed to: | Address of Property: |
|---|---|
| Term: | Interest Rate: |
| Collateral: | Cosigner: |
| Monthly Payments: | |
| Original Amount: | Date: |
| Present Balance: | |

19. Income/Expenses:

| Gross Income | | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|
| Net Sales | $ | N/A | | | | |
| Interest Income | $ | 2,507.00 | 6,116.00 | 4,333.00 | 6,124.00 | |
| Dividends | $ | N/A | | | | |
| Other | $ | | | | | |
| Operating Expenses | N/A | | | | | |
| Wages | $ | | | | | |
| Overhead | $ | | | | | |
| Lease Payments | $ | | | | | |
| Interest Expense | $ | | | | | |
| Cost of Sales | | | | | | |
| Net Income | | | | | | |

20. In addition, provide the following firm size information: NONE

| | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|
| Net Sales | | | | | |
| Interest Income | | | | | |
| Dividends | | | | | |
| Other | | | | | |

21. Does this organization maintain bank accounts? Give names and addresses of banks, savings and loan associations, and other such entities, within the United States or located elsewhere. N/A

A. Checking

| Name of Bank | Address of Bank | Account # | Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

B. Savings/Certificate of Deposit: N/A

| Name of Bank | Address of Bank | Account # | Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

C. Other Accounts: N/A

| Name of Institution | Address of Institution | Account # | Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

D. Savings & Loan Associations or other such entities: N/A

| Name of Institution | Address of Institution | Account # | Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

E. Trust Account(s)

| Name of Institution | Address of Institution | Account # | Balance |
|---|---|---|---|
| Brach Eichler L.L.C. | 101 Eisenhower Parkway<br>Roseland, NJ 07068 | | $334,275.30 |
| | | | |
| There were 2 additional trust accounts. On July 8, 2013, Brach Eichler sent the money from the "Buyer's Escrow" account to Framewear. On January 15, 2014, Brach Eichler sent the money in the "DEP Fully Funded" account to DEP as per its demand. | | | |
| | | | |

F. Other Account(s): N/A

| Name of Institution | Address of Institution | Account # | Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

22. List all commercial paper, negotiable or non-negotiable, in which the organization has any interest whatsoever, presently in transit or in the possession of any banking institution. Describe such paper and the organization's interest therein, and state its present location. List all loans receivable in excess of $10,000.00 and specify if due from an officer, stockholder, or director.

None

23. Has this organization engaged in any Joint Loan Agreements, including Letters of Credits, with any other organization(s)? If yes, describe all such agreements.

None

24. Does this organization have any debt coinsured by another organization? If yes, describe such arrangements.

No

25. List all equity participation in other organizations, both domestic and foreign, in which this organization has an interest, including the type, amount and terms of such interest.

None

26. List all debt participation in other organizations, both domestic and foreign, in which this organization has an interest, including the type, amount and terms of such interest.

None

27. Is this organization presently:

A. Active
(Answer No for inactive, but still in existence) Yes ____ No __X__

B. Void and/or terminated by State authority. Yes ____ No __X__

C. Otherwise dissolved Yes _____ No __X__

1. Date ______________________________

2. By Whom ___________________________

3. Reason ____________________________

28. A. List corporate salaries, bonuses to and/or drawings of the following personnel for the last five taxable years: NONE

| Position | Name | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|
| President | | | | | | |
| Vice President | | | | | | |
| Chairman/Board | | | | | | |
| Secretary | | | | | | |
| Treasurer | | | | | | |

B. List the five most highly compensated employees or officers other than the above, describe position and list annual salary and/or bonus for the last five taxable years: NONE

| Name | Position/Title | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

C. Describe the nature of the compensation paid to the persons listed in (A) and (B) above and set forth any stock options, pensions, profit sharing, royalties, or other deferred compensation rights of said persons.

None

29. List the organization's commercial activity, (fields of activity resulting in income), and SIC Code.

| | Commercial Activity | SIC Code |
|---|---|---|
| Primary: | No commercial activity since 2001 | |
| Other 1. | | |
| Other 2. | | |
| Other 3. | | |

30. List all other supplementary fields of activity in which this organization is engaged, either directly, through it affiliates, stating the name(s) and states(s) of incorporation of such subsidiaries or affiliates:

No current activities. Only activity was addressing the property.

31. Has this organization at any time been the subject of any proceeding under the provisions of any State Insolvency Law, or the federal Bankruptcy Act, as amended? If so, supply the following information as to each such proceeding: NO

A. Date (Commencement) ______________________

B. Date (Termination) ______________________

C. Discharge or other disposition, if any, and operative effect thereof:

______________________

______________________

D. State Court ______________ Docket No. ______________
County

E. Federal Court ______________ Docket No. ______________
County

32. A. List all real estate, and personal property of an estimated value in excess of $ 10,000.00 owned or under contract to be purchased by this organization with names and addresses of seller and contract price and where located:

None ______________________

______________________

______________________

______________________

33. List and describe all judgments, recorded and unrecorded, this organization is a party of:

A. Against the organization

We understand, but we do not have the record relating to judgments against the company in the amount of approximately $40,000 plus any accrued interest.

______________________

______________________

______________________

B. In favor of the organization

None

34. List and describe all other encumbrances (including but not limited to security interest, whether perfected or not) against any such personal property owned by the organization as is listed in 30 (A) above.

None

35. List all life insurance, now in force on any or all officers, directors, and/or "key" employees, setting forth face amounts, names of life insurance companies and policy numbers where this organization has an "insurable interest" and/or paying the premium or part of same. Where applicable, indicate under which policy(s) this organization is beneficiary, type of policy(s) this organization is a beneficiary, yearly premium, and location of policy(s). In addition, state the cash value if any and the conditions of any borrowing options available under each policy.

None

36. For the following types of policies, list all primary and excess insurance policies, the deductible amount, the per occurrence and aggregate coverage limit for each policy.

A. Comprehensive General Liability

None

B. Environmental Impairment Liability

None

C. Other policies for which coverage might apply including participation in risk retention pools.

Insurance policies and a negotiated Settlement Agreement and Release that is the cost share agreement with Atlantic Employers Insurance Company and Century Indemnity Company as successor to CIC Insurance Company as successor to Insurance Company of North America; and limited indicia of insurance policies with National Union Fire Insurance Company and an Amended Settlement Agreement that is the negotiated cost share agreement with AIG Technical Services, as agent for National Union Fire Insurance Company. Unimatic estimates that approximately $3.1 million in coverage remains under the first policy and $1.1 million under the second policy.

Other

37. List all transfers of assets (real) and/or (personal) (over $10,000.00) made by this organization, OTHER THAN IN THE ORDINARY COURSE OF BUSINESS, during the last three calendar years and state to whom transfer was made. Describe compensation paid by recipient and to whom. NONE

| Date | Value | Property Transferred | To Whom | Compensation Paid |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

38. Is this business organization a party in any law suit now pending?
Yes (Give details below) __X__ No _____

Cardean, LLC, et al. v. Unimatic Manufacturing Corporation, Superior Court, Essex County,

Docket No. L-5864-13

39. List names and addresses of any persons or other business entity, holding funds in escrow or in trust for this organization, or any of its subsidiaries or affiliates.

Brach Eichler L.L.C., 101 Eisenhower Parkway, Roseland, NJ 07068

40. Other information requested:

**Schedule of all Business Addresses**

25 Sherwood Lane, Fairfield, New Jersey 07004

17 Toms Point Lane, Lincoln Park, New Jersey 07035

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, and ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>UNIMATIC MANUFACTURING CORPORATION, CARDEAN, LLC, FRAMEWARE, INC., and PROFILES, LLC,<br><br>Defendants. | Civil No. ______ |

I, Frances B. Stella, Esq., pursuant to 28 U.S.C. § 1746, hereby certify and state under penalty of perjury, that the following is true and correct to the best of my knowledge:

1. I am a Member of Brach Eicher L.L.C., counsel to Unimatic Manufacturing Corporation ("Unimatic").

2. I submit this Certification in connection with the Consent Decree entered into between Unimatic, the United States of America, the New Jersey Department of Environmental Protection ("NJDEP"), and Cardean, LLC, Frameware, Inc., and Profiles, LLC (collectively, "Cardean").

3. Unimatic ceased its operations in 2001, is not a viable entity, and does not have any taxes owed to the United States or the State of New Jersey, thus tax returns have not been filed since the 2011 tax returns were filed.

4. Unimatic had three insurance policies for which it obtained coverage related to the contamination of 25 Sherwood Lane, Fairfield, New Jersey ("Property").

5. Unimatic had insurance with Century Indemnity Company, as successor to CCI Insurance Company, as successor to the Insurance Company of North America and Atlantic Employers Insurance Company, and Chubb (Policy Nos. GSA 002193, GLP 323549, GLP 350371, GLP 461831, and MFC D0 9628770). The original policy limits for these policies was $4,000,000.00. The remaining balance on these policies is $3,247,015.00.

6. Unimatic also had a Comprehensive General Liability and Property Coverage insurance policy with National Union Fire Insurance Company of Pittsburgh, Pa. with effective dates of December 11, 1974 to December 11, 1977 (Policy No. SMP 104 79 44). The original policy limits for these policies was $500,000.00 per year for a total of $1,500,000.00 for the three years. The remaining balance is $1,152,183.65.

7. Unimatic also had Comprehensive Business insurance policies with General Liability Coverage with the Hartford Accident & Indemnity Company ("Hartford") Policy Nos. 13CBP130371, 13CBP130677, 13CBPBG1310, and 013CBPDV1175 for the period of 1978-1983. In and around September 28, 2009, Unimatic entered into a Settlement and Release Agreement with the Hartford to resolve all claims in the amount of $880,000.00. Those monies were put in a Trust Account entitled "Seller's Escrow" and the funds were utilized to fund the remediation of the Property as explained below.

8. Following the sale of the Property to Cardean, counsel for Unimatic created three separate Trusts pursuant to the terms of the Post-Closing Agreement: the Seller's Escrow, the Buyer's Escrow, and the Escrow that was for the benefit of NJDEP.

9. On February 14, 2014, Unimatic certified that the balance of the Seller's Escrow was $334,275.30 on January 15, 2014. The funds were utilized by Unimatic to defend claims made by Cardean in the litigation known as Cardean, LLC et al. v. Unimatic Manufacturing Corporation et al., Superior Court of New Jersey, Law Division-Essex County, Docket No. L-5864-13 ("Litigation"). The year-end statements for the period of 2014 through February 29, 2020 are attached as Exhibit A.

10. At the time of the sale of the Property, Unimatic was required by Cardean's lender to establish a trust account in the amount of $120,000.00 to cover potential future costs, known as the "Buyer's Escrow". Another $20,000.00 was put into the Buyer's Escrow related to paving costs as negotiated by Cardean and Unimatic. Cardean and Unimatic entered into a Letter Agreement in and around May 30, 2007 wherein $12,500.00 was disbursed to Cardean. In and around September 24, 2012, a $55,012.94 payment was made to counsel for Cardean. On July 9, 2013, the remaining funds in the Buyer's Escrow, $85,068.65, were paid to counsel for Cardean and that account was closed.

11. Pursuant to the Industrial Site Recovery Act, financial assurance was established to cover the then estimated cost of the clean-up in the amount of $130,000.00. No disbursements were made from this account until January 15, 2014, when $153,958.66 (including principal and all accrued interest) was distributed to NJDEP and the account was closed.

12. The remaining balance of the Seller's Escrow is $68,692.71 through February 29, 2020. The Statement for February 2020 is attached as Exhibit B; however not all of the fees and obligations of Unimatic have been fully paid as of this date.

13. Unimatic utilized the funds from the Seller's Escrow to pay the costs of the vendors to conduct the remediation from 2001-2013. AIG and Chubb would then reimburse approved covered clams for their respected share of the remedial costs and litigation costs (17.94% and 38.78% respectively) back into the Seller's Escrow.

14. Upon entry of the Consent Decree, filing of the Stipulation of Dismissal of the Litigation, and final resolution of the affairs of Unimatic, the remaining assets in the Seller's Escrow will be distributed 90% to the United States Environmental Protection Agency ("EPA") and 10% to NJDEP within 60 days of final completion of winding down Unimatic. At that time, Unimatic's counsel will submit a final accounting of the Seller's Escrow to EPA and NJDEP.

Frances B. Stella, Esq.

Dated: May 27, 2020

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 1/31/2014 | | Beginning Balance | $ 334,275.30 | | $ 334,275.30 |
| | 1/31/2014 | | Interest at 1/31/14 | $ 56.79 | | $ 334,332.09 |
| | 2/12/2014 | 242 | William J. Friedman, Esq | | $ (2,620.44) | $ 331,711.65 |
| | 2/28/2014 | | Interest at 2/28/14 | $ 56.69 | | $ 331,768.34 |
| | 3/17/2014 | 243 | William Friedman | | $ (2,211.00) | $ 329,557.34 |
| | 3/20/2014 | 245 | Brach Eichler LLC | | $ (2,642.00) | $ 326,915.34 |
| | 3/20/2014 | 244 | Brach Eichler LLC | | $ (10,080.93) | $ 316,834.41 |
| | 3/31/2014 | | Interest at 3/31/14 | $ 50.70 | | $ 316,885.11 |
| | 4/30/2014 | | Interest at 4/30/14 | $ 53.83 | | $ 316,938.94 |
| | 5/22/2014 | 247 | William J. Friedman | | $ (1,815.00) | $ 315,123.94 |
| | 5/22/2014 | 246 | William J. Friedman | | $ (3,698.28) | $ 311,425.66 |
| | 5/31/2014 | | Interest at 5/31/14 | $ 52.10 | | $ 311,477.76 |
| | 6/17/2014 | 248 | William J. Friedman | | $ (561.00) | $ 310,916.76 |
| | 6/24/2014 | 249 | Brach Eichler LLC | | $ (15,523.29) | $ 295,393.47 |
| | 6/30/2014 | | Interest at 6/30/14 | $ 52.97 | | $ 295,446.44 |
| | 7/2/2014 | 26565553 | National Union Fire Insurance Co of Pittsburgh | $ 3,149.25 | | $ 298,595.69 |
| | 7/24/2014 | 250 | Brach Eichler LLC | | $ (965.00) | $ 297,630.69 |
| | 7/24/2014 | 251 | Brach Eichler LLC | | $ (3,774.50) | $ 293,856.19 |
| | 7/31/2014 | | Interest at 7/31/14 | $ 49.03 | | $ 293,905.22 |
| | 8/5/2014 | 71743506 | ACE Century Indemnity Company | $ 4,358.89 | | $ 298,264.11 |
| | 8/19/2014 | 252 | Brach Eichler LLC | | $ (5,037.50) | $ 293,226.61 |
| | 8/21/2014 | 253 | William J Friedman | | $ (66.00) | $ 293,160.61 |
| | 8/31/2014 | | Interest at 8/31/14 | $ 50.27 | | $ 293,210.88 |
| | 9/5/2014 | 71745791 | Century Indemnity Company | $ 8,214.44 | | $ 301,425.32 |
| | 9/5/2014 | 71745799 | Century Indemnity Company | $ 15,022.26 | | $ 316,447.58 |
| | 9/24/2014 | 254 | Brach Eichler LLC | | $ (7,826.43) | $ 308,621.15 |
| | 9/30/2014 | | Interest at 9/30/14 | $ 52.06 | | $ 308,673.21 |
| | 10/22/2014 | 255 | Brach Eichler LLC | | $ (10,291.00) | $ 298,382.21 |
| | 10/31/2014 | | Interest at 10/31/14 | $ 50.57 | | $ 298,432.78 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 11/19/2014 | 256 | Brach Eichler LLC | | $ (7,710.50) | $ 290,722.28 |
| | 11/21/2014 | 71752215 | ACE | $ 8,979.48 | | $ 299,701.76 |
| | 11/21/2014 | 75574426 | ACE | $ 25.59 | | $ 299,727.35 |
| | 11/30/2014 | | Interest at 11/30/14 | $ 50.55 | | $ 299,777.90 |
| | 12/18/2014 | 257 | Brach Eichler LLC | | $ (3,103.00) | $ 296,674.90 |
| | 12/23/2014 | 71754695 | Ace USA | $ 2,990.13 | | $ 299,665.03 |
| | 12/31/2014 | | Interest at 12/31/14 | $ 49.19 | | $ 299,714.22 |
| | 1/26/2015 | 258 | Brach Eichler LLC | | $ (1,093.00) | $ 298,621.22 |
| | 1/31/2015 | | Interest at 1/31/15 | $ 50.92 | | $ 298,672.14 |
| | 2/10/2015 | 71757666 | ACE USA | $ 1,627.21 | | $ 300,299.35 |
| | 2/28/2015 | | Interest at 2/28/15 | $ 50.89 | | $ 300,350.24 |
| | 3/3/2015 | 259 | Brach Eichler LLC | | $ (590.00) | $ 299,760.24 |
| | 3/31/2015 | | Interest at 3/31/15 | $ 46.01 | | $ 299,806.25 |
| | 4/29/2015 | 261 | William J. Friedman | | $ (132.00) | $ 299,674.25 |
| | 4/29/2015 | 260 | Brach Eichler LLC | | $ (10,957.50) | $ 288,716.75 |
| | 4/30/2015 | | Interest at 4/30/15 | $ 50.93 | | $ 288,767.68 |
| | 5/19/2015 | 28421976 | National Union Fire Insurance Co. of Pitsburgh | $ 2,071.62 | | $ 290,839.30 |
| | 5/29/2015 | MZ71765209 | ACE Usa | $ 4,478.12 | | $ 295,317.42 |
| | 5/31/2015 | | Interest at 5/31/15 | $ 47.79 | | $ 295,365.21 |
| | 6/10/2015 | 262 | Brach Eichler LLC | | $ (5,757.50) | $ 289,607.71 |
| | 6/25/2015 | 264 | Brach Eichler LLC, Inv # 1005348- matter # 805110 | | $ (1,515.00) | $ 288,092.71 |
| | 6/25/2015 | 263 | Brach Eichler LLC- INV 1005347 Matter # 265692 | | $ (5,527.50) | $ 282,565.21 |
| | 6/26/2015 | 71768059 | ACE USA | $ 2,232.76 | | $ 284,797.97 |
| | 6/30/2015 | | Interest at 6/30/15 | $ 49.56 | | $ 284,847.53 |
| | 7/8/2015 | 265 | Brach Eichler LLC- Invoice # 1005886 | | $ (3,112.52) | $ 281,735.01 |
| | 7/31/2015 | | Interest at 7/31/15 | $ 46.57 | | $ 281,781.58 |
| | 8/4/2015 | 28933726 | National Union Fire Insurance Co. of Pit | $ 1,287.11 | | $ 283,068.69 |
| | 8/12/2015 | 28941484 | National Union Fire Insurance Co of Pitt | $ 1,032.90 | | $ 284,101.59 |
| | 8/31/2015 | | Interest at 8/31/15 | $ 48.09 | | $ 284,149.68 |
| | 9/9/2015 | 267 | Brach Eichler LLC- Invoice # 1008293 | | $ (8,262.50) | $ 275,887.18 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 9/25/2015 | 268 | Brach Eichler LLC- Invoice # 1008809 | | $ (10,129.50) | $ 265,757.68 |
| | 9/30/2015 | | Interest at 9/30/15 | $ 47.55 | | $ 265,805.23 |
| | 10/15/2015 | 29330655 | National Union fire Insurance Co of Pitt | $ 1,817.23 | | $ 267,622.46 |
| | 10/29/2015 | 269 | Brach Eichler LLC- Inv 1010576 and 1010577 | | $ (4,682.50) | $ 262,939.96 |
| | 10/31/2015 | | Interest at 10/31/15 | $ 43.91 | | $ 262,983.87 |
| | 11/9/2015 | 71778643 | ACE USA | $ 4,411.23 | | $ 267,395.10 |
| | 11/16/2015 | 71779678 | ACE USA | $ 1,815.87 | | $ 269,210.97 |
| | 11/30/2015 | | Interest at 11/30/15 | $ 45.25 | | $ 269,256.22 |
| | 12/2/2015 | 270 | Brach Eichler LLC-Inv#1011884 and 1011883 | | $ (742.50) | $ 268,513.72 |
| | 12/11/2015 | 394401 | National Union Fire Insurance Co of Pitt | $ 2,040.68 | | $ 270,554.40 |
| | 12/11/2015 | 394422 | National Union Fire Insurance Co of Pitt | $ 840.04 | | $ 271,394.44 |
| | 12/14/2015 | 271 | Brach Eichler LLC- Inv# 1012460 | | $ (33,922.50) | $ 237,471.94 |
| | 12/23/2015 | 71782590 | ACE Usa | $ 287.94 | | $ 237,759.88 |
| | 12/30/2015 | 29754667 | National Union Fire Insurance Co of Pitt | $ 133.20 | | $ 237,893.08 |
| | 12/31/2015 | | Interest at 12/31/15 | $ 42.51 | | $ 237,935.59 |
| | 1/7/2016 | 71783802 | ACE USA | $ 13,155.15 | | $ 251,090.74 |
| | 1/27/2016 | 272 | Brach Eichler LLC | | $ (22,068.71) | $ 229,022.03 |
| | 1/31/2016 | | Interest at 1/31/16 | $ 41.62 | | $ 229,063.65 |
| | 2/19/2016 | 273 | Brach Eichler LLC | | $ (16,006.86) | $ 213,056.79 |
| | 2/29/2016 | | Interest at 2/29/16 | $ 38.70 | | $ 213,095.49 |
| | 3/25/2016 | 274 | Brach Eichler LLC | | $ (24,989.66) | $ 188,105.83 |
| | 3/31/2016 | | Interest at 3/31/16 | $ 33.77 | | $ 188,139.60 |
| | 3/31/2016 | 1790352 | ACE Usa | $ 6,207.46 | | $ 194,347.06 |
| | 4/20/2016 | 275 | Brach Eichler LLC | | $ (7,714.92) | $ 186,632.14 |
| | 4/30/2016 | | Interest at 4/30/16 | $ 32.78 | | $ 186,664.92 |
| | 5/12/2016 | 30420008 | National Union Fire Insurance Co of Pitt | $ 1,384.06 | | $ 188,048.98 |
| | 5/20/2016 | 71794818 | ACE USA | $ 2,991.84 | | $ 191,040.82 |
| | 5/20/2016 | 276 | Corodemus & Corodemus, LLC | | $ (833.33) | $ 190,207.49 |
| | 5/26/2016 | 277 | Brach Eichler LLC | | $ (4,147.50) | $ 186,059.99 |
| | 5/31/2016 | | Interest at 5/31/16 | $ 30.76 | | $ 186,090.75 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 6/14/2016 | 71797152 | ACE USA | $ 15,217.54 | | $ 201,308.29 |
| | 6/14/2016 | 71797106 | ACE USA | $ 9,690.99 | | $ 210,999.28 |
| | 6/30/2016 | | Interest at 6/30/16 | $ 33.27 | | $ 211,032.55 |
| | 7/14/2016 | 278 | Brach Eichler, LLC | | $ (11,433.50) | $ 199,599.05 |
| | 7/18/2016 | 7179982 | Ace USA | $ 1,608.40 | | $ 201,207.45 |
| | 7/31/2016 | | Interest at 7/31/16 | $ 34.30 | | $ 201,241.75 |
| | 8/1/2016 | 71801127 | Ace USA | $ 1,799.78 | | $ 203,041.53 |
| | 8/31/2016 | | Interest at 8/31/16 | $ 34.36 | | $ 203,075.89 |
| | 9/16/2016 | 31032436 | National Union Fire Insurance Co of Pitt | $ 1,218.57 | | $ 204,294.46 |
| | 9/19/2016 | 279 | Brach Eichler LLC | | $ (27,766.18) | $ 176,528.28 |
| | 9/28/2016 | 280 | Brach Eichler LLC- inv #'s 1024697 & 1024696 | | $ (4,403.12) | $ 172,125.16 |
| | 9/30/2016 | | Interest at 9/30/16 | $ 33.85 | | $ 172,159.01 |
| | 10/21/2016 | 281 | Brach Eichler LLC- Inv # 1025767 & 1025769 | | $ (2,167.98) | $ 169,991.03 |
| | 10/28/2016 | 71808671 | Ace USA | $ 1,707.53 | | $ 171,698.56 |
| | 10/31/2016 | | Interest at 10/31/16 | $ 28.38 | | $ 171,726.94 |
| | 11/21/2016 | 31315366 | National Union Fire Insurance Co of Pitt | $ 388.94 | | $ 172,115.88 |
| | 11/22/2016 | 282 | Brach Eichler LLC | | $ (5,772.50) | $ 166,343.38 |
| | 11/30/2016 | | Interest at 11/30/16 | $ 29.06 | | $ 166,372.44 |
| | 12/1/2016 | 71811184 | Chubb | $ 840.74 | | $ 167,213.18 |
| | 12/7/2016 | 31402162 | National Union Fire Insurance Co of Pitt | $ 789.92 | | $ 168,003.10 |
| | 12/13/2016 | 31426817 | National Union Fire Ins Co of Pittsburgh | $ 1,035.59 | | $ 169,038.69 |
| | 12/23/2016 | 71813526 | Chubb | $ 2,238.58 | | $ 171,277.27 |
| | 12/31/2016 | | Interest at 12/31/16 | $ 27.60 | | $ 171,304.87 |
| | 1/31/2017 | | Interest at 1/31/17 | $ 29.07 | | $ 171,333.94 |
| | 1/31/2017 | 71816396 | Chubb | $ 4,872.71 | | $ 176,206.65 |
| | 1/31/2017 | 71816542 | Chubb | $ 11,608.47 | | $ 187,815.12 |
| | 1/31/2017 | 283 | Brach Eichler LLC | | $ (18,083.29) | $ 169,731.83 |
| | 2/22/2017 | 284 | Brach Eichler LLC | | $ (6,345.00) | $ 163,386.83 |
| | 2/27/2017 | 31648417 | National Union Fire Insurance Co of Pitt | $ 3,244.14 | | $ 166,630.97 |
| | 2/28/2017 | | Interest at 2/28/17 | $ 28.92 | | $ 166,659.89 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 3/9/2017 | 71819750 | Chubb | $ 7,012.70 | | $ 173,672.59 |
| | 3/9/2017 | 31726881 | National Union Fire Insurance Co of Pitt | $ 1,138.29 | | $ 174,810.88 |
| | 3/28/2017 | 71821847 | CHUBB | $ 2,460.59 | | $ 177,271.47 |
| | 3/28/2017 | 285 | Brach Eichler LLC | | $ (929.72) | $ 176,341.75 |
| | 3/31/2017 | | Interest at 3/31/17 | $ 26.25 | | $ 176,368.00 |
| | 4/12/2017 | 31851153 | National Union Fire Insurance Co of Pitt | $ 166.79 | | $ 176,534.79 |
| | 4/12/2017 | 31860010 | National Union Fire Insurance Co of Pitt | $ 39,305.35 | | $ 215,840.14 |
| | 4/20/2017 | 286 | Brach Eichler LLC | | $ (17,449.73) | $ 198,390.41 |
| | 4/30/2017 | | Interest at 4/30/17 | $ 32.27 | | $ 198,422.68 |
| | 5/9/2017 | 71825477 | Chubb | $ 6,767.00 | | $ 205,189.68 |
| | 5/30/2017 | 287 | Brach Eichler LLC | | $ (19,128.98) | $ 186,060.70 |
| | 5/31/2017 | | Interest at 5/31/17 | $ 33.21 | | $ 186,093.91 |
| | 5/31/2017 | 31993237 | National Union Fire Insurance Co of Pitt | $ 3,130.48 | | $ 189,224.39 |
| | 6/19/2017 | 32051321 | National Union Fire Insurance Co of Pitt | $ 3,431.74 | | $ 192,656.13 |
| | 6/19/2017 | 71828722 | Chubb | $ 7,418.21 | | $ 200,074.34 |
| | 6/30/2017 | | Interest at 6/30/17 | $ 32.93 | | $ 200,107.27 |
| | 7/14/2017 | 71830642 | Chubb | $ 5,497.07 | | $ 205,604.34 |
| | 7/14/2017 | 32118414 | National Union Fire Ins Co of Pitt | $ 2,543.00 | | $ 208,147.34 |
| | 7/18/2017 | 288 | Brach Eichler LLC | | $ (14,175.00) | $ 193,972.34 |
| | 7/20/2017 | 289 | Brach Eichler LLC | | $ (27,975.41) | $ 165,996.93 |
| | 7/31/2017 | | Interest at 7/31/17 | $ 31.98 | | $ 166,028.91 |
| | 8/10/2017 | 71833593 | Chubb | $ 10,848.87 | | $ 176,877.78 |
| | 8/10/2017 | 32224781 | National Union Fire Insurance Co of Pitt | $ 5,018.79 | | $ 181,896.57 |
| | 8/31/2017 | | Interest at 8/31/17 | $ 29.51 | | $ 181,926.08 |
| | 9/8/2017 | 290 | Brach Eichler LLC | | $ (42,495.80) | $ 139,430.28 |
| | 9/30/2017 | | Interest at 9/30/17 | $ 27.64 | | $ 139,457.92 |
| | 10/5/2017 | 71838700 | Chubb | $ 13,260.85 | | $ 152,718.77 |
| | 10/5/2017 | 71837505 | Chubb | $ 16,479.87 | | $ 169,198.64 |
| | 10/6/2017 | 291 | Brach Eichler LLC | | $ (34,195.08) | $ 135,003.56 |
| | 10/31/2017 | | Interest at 10/31/17 | $ 23.19 | | $ 135,026.75 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 10/31/2017 | 71841471 | Chubb | $ 18,179.39 | | $ 153,206.14 |
| | 11/7/2017 | 292 | Brach Eichler LLC- Inv # 1040368-1040369 | | $ (46,878.25) | $ 106,327.89 |
| | 11/29/2017 | 293 | Brach Eichler LLC | | $ (21,744.59) | $ 84,583.30 |
| | 11/30/2017 | | Interest at 11/30/17 | $ 20.81 | | $ 84,604.11 |
| | 12/27/2017 | 294 | Brach Eichler LLC | | $ (18,873.93) | $ 65,730.18 |
| | 12/31/2017 | | Interest at 12/31/17 | $ 14.38 | | $ 65,744.56 |
| | 1/30/2018 | 295 | Brach Eichler LLC | | $ (5,653.50) | $ 60,091.06 |
| | 1/31/2018 | | Interest at 1/31/18 | $ 11.48 | | $ 60,102.54 |
| | 2/20/2018 | 32732222 | National Union Fire Insurance Co of Pitt | $ 29,455.26 | | $ 89,557.80 |
| | 2/28/2018 | | Interest at 2/28/18 | $ 11.17 | | $ 89,568.97 |
| | 3/16/2018 | 71854013 | Chubb | $ 17,944.28 | | $ 107,513.25 |
| | 3/16/2018 | 296 | Brach Eichler LLC - Inv# 1045250,1045249 | | $ (7,542.50) | $ 99,970.75 |
| | 3/31/2018 | | Interest at 3/31/18 | $ 14.15 | | $ 99,984.90 |
| | 4/5/2018 | 297 | Brach Eichler LLC - Invoice No.: 1046274 and 1046275 | | $ (1,721.00) | $ 98,263.90 |
| | 4/19/2018 | | Penny Arcade | $ 0.81 | | $ 98,264.71 |
| | 4/30/2018 | | Interest at 4/30/18 | $ 16.79 | | $ 98,281.50 |
| | 5/17/2018 | 30209902 | Chubb | $ 667.40 | | $ 98,948.90 |
| | 5/18/2018 | 298 | Brach Eichler LLC- Inv # 1048657 | | $ (20,677.35) | $ 78,271.55 |
| | 5/31/2018 | | Interest at 5/31/18 | $ 15.62 | | $ 78,287.17 |
| | 6/8/2018 | 299 | Brach Eichler LLC- Inv # 1048883 | | $ (2,301.50) | $ 75,985.67 |
| | 6/30/2018 | | Interest at 6/30/18 | $ 16.55 | | $ 76,002.22 |
| | 7/23/2018 | 50002985 | Chubb | $ 8,018.68 | | $ 84,020.90 |
| | 7/23/2018 | 228827 | Penny Arcade Settlement | $ 0.86 | | $ 84,021.76 |
| | 7/30/2018 | | Interest at 7/30/18 | $ 22.02 | | $ 84,043.78 |
| | 7/31/2018 | 301 | Brach Eichler LLC - Inv # 1051288 | | $ (52.50) | $ 83,991.28 |
| | 7/31/2018 | 300 | Brach Eichler LLC - Inv # 1050004 | | $ (6,432.45) | $ 77,558.83 |
| | 8/9/2018 | 302 | Brach Eichler LLC- Inv # 1051287 | | $ (1,369.50) | $ 76,189.33 |
| | 8/31/2018 | | Interest at 8/31/18 | $ 23.26 | | $ 76,212.59 |
| | 9/19/2018 | 303 | Brach Eichler LLC - Inv # 1052778 | | $ (372.00) | $ 75,840.59 |
| | 9/30/2018 | | Interest at 09/30/18 | $ 22.64 | | $ 75,863.23 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 10/9/2018 | 304 | Brach Eichler LLC - Inv # 1053733 | | $ (5,002.00) | $ 70,861.23 |
| | 10/15/2018 | 50007927 | Chubb | $ 144.26 | | $ 71,005.49 |
| | 10/31/2018 | | Interest at 10/31/18 | $ 21.12 | | $ 71,026.61 |
| | 11/15/2018 | 50009601 | Chubb | $ 1,660.17 | | $ 72,686.78 |
| | 11/27/2018 | 305 | Brach Eic hler LLC - Inv # 1054928 | | $ (4,281.00) | $ 68,405.78 |
| | 11/30/2018 | | Interest at 11/30/18 | $ 21.28 | | $ 68,427.06 |
| | 12/13/2018 | 306 | Brach Eichler LLC - Inv # 1056222 | | $ (2,538.85) | $ 65,888.21 |
| | 12/21/2018 | 50011005 | Chubb | $ 984.57 | | $ 66,872.78 |
| | 12/31/2018 | | Interest at 12/31/18 | $ 19.61 | | $ 66,892.39 |
| | 1/10/2019 | 307 | Brach Eichler LLC | | $ (702.00) | $ 66,190.39 |
| | 1/31/2019 | | Interest at 1/31/19 | $ 19.81 | | $ 66,210.20 |
| | 2/1/2019 | 308 | Brach Eichler LLC- Inv # 1056878 | | $ (1,426.59) | $ 64,783.61 |
| | 2/14/2019 | 50013489 | Chubb- inv # 1054249,1045250,1048883,1050004,1051287,1053733 | $ 8,782.87 | | $ 73,566.48 |
| | 2/28/2019 | | Interest at 2/28/19 | $ 20.32 | | $ 73,586.80 |
| | 3/21/2019 | 33654709 | National Union Fire Insurance Company - inv # 1043589-1056878(15 invoices) | $ 10,803.81 | | $ 84,390.61 |
| | 3/28/2019 | 309 | Brach Eichler LLC - Inv # 1061219 | | $ (5,637.14) | $ 78,753.47 |
| | 3/31/2019 | | Interest at 3/31/19 | $ 20.18 | | $ 78,773.65 |
| | 4/30/2019 | | Interest at 4/30/19 | $ 23.74 | | $ 78,797.39 |
| | 5/31/2019 | | Interest at 5/31/19 | $ 22.67 | | $ 78,820.06 |
| | 6/27/2019 | 50017957 | Chubb- inv 1061219 | $ 1,288.33 | | $ 80,108.39 |
| | 6/30/2019 | | Interest at 6/30/19 | $ 23.44 | | $ 80,131.83 |
| | 7/25/2019 | 311 | Brach Eichler LLC | | $ (7,080.00) | $ 73,051.83 |
| | 7/31/2019 | | Interest at 7/31/19 | $ 23.03 | | $ 73,074.86 |
| | 8/13/2019 | 312 | Brach Eichler LLC- Invoice # 1066917 | | $ (1,738.00) | $ 71,336.86 |
| | 8/27/2019 | 313 | Brach Eichler LLC - Inv # 1067440 | | $ (936.00) | $ 70,400.86 |
| | 8/31/2019 | | Interest at 8/31/19 | $ 21.74 | | $ 70,422.60 |
| | 9/23/2019 | 314 | Brach Eichler LLC - Inv# 1068942-7/31/19 | | $ (1,544.00) | $ 68,878.60 |
| | 9/30/2019 | | Interest at 9/30/19 | $ 20.95 | | $ 68,899.55 |

Brach Eichler LLC
Trust Transaction Detail Report
Report Thru: 03/12/2020

| | Tran Date | Check Number | Remarks | Deposits | Payments | Balance |
|---|---|---|---|---|---|---|
| **TD** | **TD Bank Master** | | | | | |
| UNI179 | Unimatic Manufacturing Corp. | | | | | |
| 805110 | ISRA ADVICE | | | | | |
| | 10/31/2019 | | Interest at 10/31/19 | $ 19.82 | | $ 68,919.37 |
| | 11/6/2019 | 315 | Brach Eichler LLC - Inv # 1070630 | | $ (1,113.00) | $ 67,806.37 |
| | 11/25/2019 | 34179238 | National Union Fire Ins Co of Pittsburgh- inv # 1058193,1061219,1062551,1064168,1064829,1066917,1067440, 1068942 | $ 3,164.10 | | $ 70,970.47 |
| | 11/25/2019 | 50026119 | Chubb- Inv 1062551,1064168,1068492,1067440,1068942 | $ 3,346.71 | | $ 74,317.18 |
| | 11/30/2019 | | Interest at 11/30/19 | $ 20.30 | | $ 74,337.48 |
| | 12/2/2019 | 316 | Brach Eichler LLC- Inv # 1071675-p/e 10/1/19-10/31/19 | | $ (2,255.00) | $ 72,082.48 |
| | 12/31/2019 | | Interest at 12/31/19 | $ 21.02 | | $ 72,103.50 |
| | 2/20/2020 | 317 | Brach Eichler LLC - Invoice#1074660 p/e: 11/1/19-1/31/20 | | $ (3,453.50) | $ 68,650.00 |
| | 2/26/2020 | | Interest at 1/31/2020 | $ 21.39 | | $ 68,671.39 |
| | 2/29/2020 | | Interest at 2/29/2020 | $ 21.32 | | $ 68,692.71 |
| | | | **Total** | **$ 712,451.52** | **$ (643,758.81)** | **$ 68,692.71** |

TD Bank
America's Most Convenient Bank®

TD BANK, N.A.
ATTN: ESCROW SERVICES AIM 02-206-01-23
6000 ATRIUM WAY
MT LAUREL, NJ 08054
(886) 327-7450
CURRENT ACCOUNT DETAIL STATEMENT
AS OF FEBRUARY 29, 2020

EscrowDirect
P D1 PAGE 1

BRACH EICHLER LLC
ATTORNEY TRUST ACCOUNT
101 EISENHOWER PARKWAY
ROSELAND NJ 07068

MASTER: 00000000050443
DISBURSEMENT ACCT: 00003453914422

ACCOUNT NBR: 00007760778832
UNIMATIC MANUFACTURING CORP
SELLERS ESCROW
BRACH EICHLER LLC
17 TOMS POINT LANE
LINCOLN PARK NJ 07035

TAX ID: *****5225
MEMO 1:
MEMO 2:

| DATE | DESCRIPTION | SERIAL NBR | AMOUNT | | BALANCE |
|---|---|---|---|---|---|
| 02/01/2020 | AS OF BALANCE | | | | 72,124.89 |
| 02/24/2020 | DEBIT | 0000000317 | 3,453.50 | DR | 68,671.39 |
| 02/25/2020 | INTEREST EARNED | | 21.32 | CR | 68,692.71 |

TOTALS: ACCOUNTS: 1 BALANCE: 68,692.71

Member FDIC TD Bank, N.A.

000126 5/5

Appendix B

Unimatic/Cardean Consent Decree

APPENDIX C

List of Mortgages, Taxes and Liens on Cardean LLC Property
at 25 Sherwood Lane, Fairfield, New Jersey to Be Paid Off

| | PAYEE | AMOUNT |
|---|---|---|
| 1. | Township of Fairfield<br>230 Fairfield Road<br>Fairfield, New Jersey 07004 | $54,927.48 |
| 2. | New Jersey Department of Environmental Protection<br>401 East State Street<br>Trenton, New Jersey 08625 | $26,000.00 |

Return Address:
ABC Company
1 Main St
Town, NJ 00000

APPENDIX D - MODEL DEED NOTICE

DEED NOTICE

This shell document contains blanks and matter in brackets [ ]. These blanks shall be replaced with the required site information prior to recording.

Matter bracketed [ ] is not intended for deletion, but rather is intended to be descriptive of the variable information that may be contained in the final document.

IN ACCORDANCE WITH N.J.S.A. 58:10B-13, THIS DOCUMENT IS TO BE RECORDED IN THE SAME MANNER AS ARE DEEDS AND OTHER INTERESTS IN REAL PROPERTY.

Prepared by: ________________________________________
[Signature]

________________________________________
[Print name below signature]

Recorded by: ________________________________________
[Signature, Officer of County Recording Office]

________________________________________
[Print name below signature]

DEED NOTICE

This Deed Notice is made as of the _____ day of _____, ____, by *[Insert the full legal name and address of each current property owner*] (together with his/her/its/their successors and assigns, collectively "Owner").

1. THE PROPERTY. [*Insert the full legal name and address of each current property owner*] [*Insert as appropriate: "is", or "are"*] the owner in fee simple of certain real property designated as Block(s) _____ Lot(s) _____, on the tax map of the [*Insert, as appropriate: City/Borough/Township/Town*] of [*Insert the name of municipality*], [*Insert the name of county*] County; the New Jersey Department of Environmental Protection Program Interest Number (Preferred ID) for the contaminated site which includes this property is [*Insert the Program Interest Number (Preferred ID)*]; the U.S. Environmental Protection Agency's Site ID No. is [ ]; and the property is more particularly described in Exhibit A, which is attached hereto and made a part hereof (the "Property").

2. REMEDIATION.

i. [*Insert name of the Licensed Site Remediation Professional and LSRP License No. of the LSRP that approved this Deed Notice*] has approved this Deed Notice as an institutional control for the Property, which is part of the remediation of the Property.

ii. N.J.A.C. 7:26C-7 requires the Owner, among other persons, to obtain a soil remedial action permit for the soil remedial action at the Property. That permit will contain the monitoring, maintenance and biennial certification requirements that apply to the Property.

3. SOIL CONTAMINATION. [*Insert the full legal name of the person that was responsible for conducting the remediation*] has remediated contaminated soil at the Property, such that soil contamination remains in certain areas of the Property that contains contaminants in concentrations that do not allow for the unrestricted use of the Property; this soil contamination is described, including the type, concentration and specific location of such contaminants, in Exhibit B, which is attached hereto and made a part hereof. As a result, there is a statutory requirement for this Deed Notice [*include if appropriate:* and engineering controls] in accordance with N.J.S.A. 58:10B-13.

4. CONSIDERATION. In accordance with the remedial action for the site which included the Property, and in consideration of the terms and conditions of that remedial action, and other good and valuable consideration, Owner has agreed to subject the Property to certain statutory and regulatory requirements that impose restrictions upon the use of the Property, to restrict certain uses of the Property, and to provide notice to subsequent owners, lessees and operators of the restrictions and the monitoring, maintenance, and biennial certification requirements outlined in this Deed Notice and required by law, as set forth herein.

5A. RESTRICTED AREAS. Due to the presence of contamination remaining at concentrations that do not allow for unrestricted use, the Owner has agreed, as part of the remedial action for the Property, to restrict the use of certain parts of the Property (the "Restricted Areas"); a narrative description of these restrictions is provided in Exhibit C, which is attached hereto and made a part hereof. The Owner has also agreed to maintain a list of these restrictions on site for inspection by governmental officials.

5B. RESTRICTED LAND USES. The following statutory land use restrictions apply to the Restricted Areas:

i. The Brownfield and Contaminated Site Remediation Act, N.J.S.A. 58:10B-12.g(10), prohibits the conversion of a contaminated site, remediated to non-residential soil remediation standards that require the maintenance of engineering or institutional controls, to a child care facility, or public, private, or charter school without the Department's prior written approval, unless a presumptive remedy is implemented; and

ii. The Brownfield and Contaminated Site Remediation Act, N.J.S.A. 58:10B-12.g(12), prohibits the conversion of a landfill, with gas venting systems and or leachate collection

systems, to a single family residence or a child care facility without the Department's prior written approval.

[*Insert the following paragraph when engineering controls are also implemented at the site:*

5C. ENGINEERING CONTROLS. Due to the presence and concentration of these contaminants, the Owner has also agreed, as part of the remedial action for the Property, to the placement of certain engineering controls on the Property; a narrative description of these engineering controls is provided in Exhibit C.]

6A. CHANGE IN OWNERSHIP AND REZONING.

i. The Owner and the subsequent owners and lessees, shall cause all leases, grants, and other written transfers of an interest in the Restricted Areas to contain a provision expressly requiring all holders thereof to take the Property subject to the restrictions contained herein and to comply with all, and not to violate any of the conditions of this Deed Notice. Nothing contained in this Paragraph shall be construed as limiting any obligation of any person to provide any notice required by any law, regulation, or order of any governmental authority.

ii. The Owner and the subsequent owners shall provide written notice to the Department of Environmental Protection on a form provided by the Department and available at www.nj.gov/srp/forms within thirty (30) calendar days after the effective date of any conveyance, grant, gift, or other transfer, in whole or in part, of the owner's interest in the Restricted Area.

iii. The Owner and the subsequent owners shall provide written notice to the Department, on a form available from the Department at www.nj.gov/srp/forms, within thirty (30) calendar days after the owner's petition for or filing of any document initiating a rezoning of the Property to residential.

6B. SUCCESSORS AND ASSIGNS. This Deed Notice shall be binding upon Owner and upon Owner's successors and assigns, and subsequent owners, lessees and operators while each is an owner, lessee, or operator of the Property.

7A. ALTERATIONS, IMPROVEMENTS, AND DISTURBANCES.

i. The Owner and all subsequent owners and lessees shall notify any person, including, without limitation, tenants, employees of tenants, and contractors, intending to conduct invasive work or excavate within the Restricted Areas, of the nature and location of contamination in the Restricted Areas, and, of the precautions necessary to minimize potential human exposure to contaminants.

ii. Except as provided in Paragraph 7B, below, no person shall make, or allow to be made, any alteration, improvement, or disturbance in, to, or about the Property which disturbs any engineering control at the Property without first obtaining a soil remedial action permit modification pursuant to N.J.A.C. 7:26C-7. Nothing herein shall constitute a waiver

of the obligation of any person to comply with all applicable laws and regulations including, without limitation, the applicable rules of the Occupational Safety and Health Administration.

iii. Notwithstanding subparagraph 7Aii., above, a soil remedial action permit modification is not required for any alteration, improvement, or disturbance provided that the owner, lessee or operator:

(A) Notifies the Department of Environmental Protection of the activity by calling the DEP Hotline, at 1-877-WARN-DEP or 1-877-927-6337, within twenty-four (24) hours after the beginning of each alteration, improvement, or disturbance;

(B) Restores any disturbance of an engineering control to pre-disturbance conditions within sixty (60) calendar days after the initiation of the alteration, improvement or disturbance;

(C) Ensures that all applicable worker health and safety laws and regulations are followed during the alteration, improvement, or disturbance, and during the restoration;

(D) Ensures that human exposure to contamination in excess of the remediation standards does not occur; and

(E) Describes, in the next biennial certification the nature of the alteration, improvement, or disturbance, the dates and duration of the alteration, improvement, or disturbance, the name of key individuals and their affiliations conducting the alteration, improvement, or disturbance, a description of the notice the Owner gave to those persons prior to the disturbance.

7B. EMERGENCIES. In the event of an emergency which presents, or may present, an unacceptable risk to the public health and safety, or to the environment, or immediate environmental concern, see N.J.S.A. 58:10C-2, any person may temporarily breach an engineering control provided that that person complies with each of the following:

i. Immediately notifies the Department of Environmental Protection of the emergency, by calling the DEP Hotline at 1-877-WARNDEP or 1-877-927-6337;

ii. Hires a Licensed Site Remediation Professional (unless the Restricted Areas includes an unregulated heating oil tank) to respond to the emergency;

iii. Limits both the actual disturbance and the time needed for the disturbance to the minimum reasonably necessary to adequately respond to the emergency;

iv. Implements all measures necessary to limit actual or potential, present or future risk of exposure to humans or the environment to the contamination;

v. Notifies the Department of Environmental Protection when the emergency or immediate environmental concern has ended by calling the DEP Hotline at 1-877-WARNDEP or 1-877-927-6337; and

vi. Restores the engineering control to the pre-emergency conditions as soon as possible, and provides notification to the Department of Environmental Protection within sixty (60) calendar days after completion of the restoration of the engineering control, including: (a) the nature and likely cause of the emergency; (b) the potential discharges of or exposures to contaminants, if any, that may have occurred; (c) the measures that have been taken to mitigate the effects of the emergency on human health and the environment; (d) the measures completed or implemented to restore the engineering control; and (e) the changes to the engineering control or site operation and maintenance plan to prevent reoccurrence of such conditions in the future.

8. TERMINATION OF DEED NOTICE.

i. This Deed Notice may be terminated only upon filing of a Termination of Deed Notice, available at N.J.A.C. 7:26C Appendix C, with the office of the [*Insert as appropriate the County Clerk/Register of Deeds and Mortgages*] of [*Insert the name of the County*] County, New Jersey, expressly terminating this Deed Notice.

ii. Within thirty (30) calendar days after the filing of a Termination of Deed Notice, the owner of the property shall apply to the Department for termination of the soil remedial action permit pursuant to N.J.A.C. 7:26C-7.

9. ACCESS. The Owner, and the subsequent owners, lessees and operators agree to allow the Department and the U.S. Environmental Protection Agency, their agents and representatives access to the Property to inspect and evaluate the continued protectiveness of the remedial action that includes this Deed Notice and to conduct additional remediation to ensure the protection of the public health and safety and of the environment if the subsequent owners, lessees and operators, during their ownership, tenancy, or operation, and the Owner fail to conduct such remediation pursuant to this Deed Notice as required by law. The Owner, and the subsequent owners and lessees, shall also cause all leases, subleases, grants, and other written transfers of an interest in the Restricted Areas to contain a provision expressly requiring that all holders thereof provide such access to the Department and the U.S. Environmental Protection Agency.

10. ENFORCEMENT OF VIOLATIONS.

i. This Deed Notice itself is not intended to create any interest in real estate in favor of the Department of Environmental Protection or the U.S. Environmental Protection Agency, nor to create a lien against the Property, but merely is intended to provide notice of certain conditions and restrictions on the Property and to reflect the regulatory and statutory obligations imposed as a conditional remedial action for this site.

ii. The restrictions provided herein may be enforceable solely by the Department or the U.S. Environmental Protection Agency against any person who violates this Deed Notice. To enforce violations of this Deed Notice, the Department may initiate one or more enforcement actions pursuant to N.J.S.A. 58:10-23.11, and N.J.S.A. 58:10C, and require additional remediation and assess damages pursuant to N.J.S.A. 58:10-23.11, and N.J.S.A. 58:10C, or the U.S. Environmental Protection Agency may initiate enforcement action pursuant to the Consent Decree entered in United States v. Unimatic Manufacturing Corporation, et al., [Docket No.].

11. SEVERABILITY. If any court of competent jurisdiction determines that any provision of this Deed Notice requires modification, such provision shall be deemed to have been modified automatically to conform to such requirements. If a court of competent jurisdiction determines that any provision of this Deed Notice is invalid or unenforceable and the provision is of such a nature that it cannot be modified, the provision shall be deemed deleted from this instrument as though the provision had never been included herein. In either case, the remaining provisions of this Deed Notice shall remain in full force and effect.

12A. EXHIBIT A. Exhibit A includes the following maps of the Property and the vicinity:

i. Exhibit A-1: Vicinity Map - A map that identifies by name the roads, and other important geographical features in the vicinity of the Property (for example, USGS Quad map, Hagstrom County Maps);

ii. Exhibit A-2: Metes and Bounds Description - A tax map of lots and blocks as wells as metes and bounds description of the Property, including reference to tax lot and block numbers for the Property;

iii. Exhibit A-3: Property Map - A scaled map of the Property, scaled at one inch to 200 feet or less, and if more than one map is submitted, the maps shall be presented as overlays, keyed to a base map; and the Property Map shall include diagrams of major surface topographical features such as buildings, roads, and parking lots.

12B. EXHIBIT B. Exhibit B includes the following descriptions of the Restricted Areas:

i. Exhibit B-1: Restricted Area Map - A separate map for each restricted area that includes:

(A) As-built diagrams of each engineering control, including caps, fences, slurry walls, (and, if any) ground water monitoring wells, extent of the ground water classification exception area, pumping and treatment systems that may be required as part of a ground water engineering control in addition to the deed notice

(B) As-built diagrams of any buildings, roads, parking lots and other structures that function as engineering controls; and

(C) Designation of all soil and sediment sample locations within the restricted areas that exceed any soil or sediment standard that are keyed into one of the tables described in the following paragraph.

ii. Exhibit B-2: Restricted Area Data Table - A separate table for each restricted area that includes either (A) or (B) through (F):

(A) Only for historic fill extending over the entire site or a portion of the site and for which analytical data are limited or do not exist, a narrative that states that historic fill is present at the site, a description of the fill material (e.g., ash, cinders, brick, dredge material), and a statement that such material may include, but is not limited to, contaminants such as PAHs and metals;

(B) Sample location designation from Restricted Area map (Exhibit B-1);

(C) Sample elevation based upon mean sea level;

(D) Name and chemical abstract service registry number of each contaminant with a concentration that exceeds the unrestricted use standard;

(E) The restricted and unrestricted use standards for each contaminant in the table; and

(F) The remaining concentration of each contaminant at each sample location at each elevation.

12C. EXHIBIT C. Exhibit C includes narrative descriptions of the institutional controls [*Insert as appropriate: and engineering controls*] as follows:

i. Exhibit C-1: Deed Notice as Institutional Control: Exhibit C-1 includes a narrative description of the restriction and obligations of this Deed Notice that are in addition to those described above, as follows:

(A) Description and estimated size of the Restricted Areas as described above;

(B) Description of the restrictions on the Property by operation of this Deed Notice; and

(C) The objective of the restrictions.

[*Insert the following if engineering controls are part of the remedial action for the site*:

ii. Exhibit C-2: [*Insert the name of the first engineering control*]: Exhibit C-2 includes a narrative description of [*Insert the name of the first engineering control*] as follows:

(A) Description of the engineering control;

(B) The objective of the engineering control; and

(C) How the engineering control is intended to function.

[*Repeat the contents of Exhibit C-2, renumbering accordingly, for each separate engineering control that is part of the remedial action for the site.*]

13. SIGNATURES. IN WITNESS WHEREOF, Owner has executed this Deed Notice as of the date first written above.

[If Owner is an individual]

WITNESS: ____________________________
[Signature]

____________________________
[Print name below signature]

STATE OF [State where document is executed] SS.:
COUNTY OF [County where document is executed]

I certify that on _________, 20__, [Name of Owner] personally came before me, and this person acknowledged under oath, to my satisfaction, that this person [or if more than one person, each person]

(a) is named in and personally signed this document; and

(b) signed, sealed and delivered this document as his or her act and deed.

____________________________

____________________________, Notary Public
[Print Name and Title]

14. SIGNATURES. IN WITNESS WHEREOF, Owner has executed this Deed Notice as of the date first written above.

[If Owner is a corporation]

ATTEST: [Name of corporation]

_________________________ By_______________________

_________________________ _________________________
[Print name and title] [Signature]

STATE OF [State where document is executed] SS.:
COUNTY OF [County where document is executed]

I certify that on ________, 20__, [Name of person executing document on behalf of Owner] personally came before me, and this person acknowledged under oath, to my satisfaction, that:

(a) this person is the [secretary/assistant secretary] of [Owner], the corporation named in this document;

(b) this person is the attesting witness to the signing of this document by the proper corporate officer who is the [president/vice president] of the corporation;

(c) this document was signed and delivered by the corporation as its voluntary act and was duly authorized;

(d) this person knows the proper seal of the corporation which was affixed to this document; and

(e) this person signed this proof to attest to the truth of these facts.

___________________________________
[Signature]

___________________________________
[Print name and title of attesting witness]

Signed and sworn before me on ________, 20__

___________________________________, Notary Public

___________________________________
[Print name and title]

Unimatic/Cardean Consent Decree

Appendix E

Prepared by: ___________________________

**NOTICE OF FEDERAL LIEN**

(TO BE FILED IN THE MORTGAGE BOOK)

NOTICE IS HEREBY GIVEN by the United States of America that it holds a first priority lien on the lands and all real property and premises described below situated in the State of New Jersey as provided by Section 107(l) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(l), pursuant to a Consent Decree entered in *United States v. Unimatic Manufacturing Corporation, et al.*, __-cv-____. The lien for which this instrument gives notice exists in favor of the United States upon all real property and rights to such property which belong to Cardean, LLC and which are, have been, or will be subject to or affected by removal and remedial actions, as defined by federal law, at the real property located at 25 Sherwood Lane, Fairfield, Essex County, New Jersey, and designated as Block 2302, Lot 8 on the Tax Map of Fairfield, New Jersey. The real property:

> BEING the same property conveyed to Cardean, LLC under deed from Unimatic Manufacturing Corporation, dated April 1, 2002 and recorded April 29, 2002 in the Essex County Clerk's Office in Deed Book 5879, Page 5.

Pursuant to Section 107(l) of CERCLA, 42 U.S.C. § 9607(l), this lien secures a liability of at least $8,744,500.32 (EIGHT MILLION SEVEN HUNDRED FORTY-FOUR THOUSAND FIVE HUNDRED DOLLARS AND THIRTY-TWO CENTS). This amount represents the costs incurred by the United States at and relating to the above-mentioned real property as of December 31, 2019 This amount will increase as costs incurred increase.

This statutory lien exists and continues to exist until the liability for such costs and damages is satisfied pursuant to the Consent Decree entered in *United States v. Unimatic Manufacturing Corporation, et al.*, __-cv-____.

IN WITNESS WHEREOF, the United States has caused this instrument to be executed through the United States Environmental Protection Agency, and its attorney, in his official capacity as Regional Counsel of the United States Environmental Protection Agency, Region II.

Signed in New York, New York on this ____ day of ____________, 2020

By: ________________________________
ERIC SCHAAF
Regional Counsel
United States Environmental Protection Agency
Region II
290 Broadway – 17th Floor
New York, New York 10007

State of New York )
) ss:
County of New York )

On the ______ day of ____________, 2020 before me, the subscriber, personally appeared Eric Schaaf, the Regional Counsel of the United States Environmental Protection Agency, Region II, to me personally known to be the same person described in and who executed the within NOTICE OF FEDERAL LIEN, and he acknowledged to me that he executed the same as such Regional Counsel as aforesaid for the purpose therein mentioned.

______________________________
Notary Public
State of New York
My Commission Expires:__________