NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, and ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND,<br><br>*Plaintiffs*,<br>v.<br><br>UNIMATIC MANUFACTURING CORPORATION, CARDEAN, LLC, FRAMEWARE, INC., and PROFILES, LLC,<br><br>*Defendants*. | Civil No. 2:20-cv-17284 (KSH) (CLW)<br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court on notice of lodging a consent decree ("Consent Decree"). On November 27, 2020, plaintiffs United States of America on behalf of the Administrator of the Environmental Protection Agency ("EPA"), the New Jersey Department of Environmental Protection ("NJDEP"), and the Administrator of the New Jersey Spill Compensation Fund ("Fund Administrator") filed a complaint against Unimatic Manufacturing Corporation, Cardean, LLC, Frameware, Inc., and Profiles, LLC. (D.E. 1.) That same day, the EPA, NJDEP, and Fund Administrator lodged the fully executed Consent Decree with the Court. (D.E. 2-1.)

1

The proposed Consent Decree resolves all claims brought against defendants under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), and the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. § 58:10-23.11 to 23.24, to recover costs incurred in responding to the release and threatened release of hazardous substances into the environment at the Unimatic Manufacturing Corporation Superfund Site (the "Site"). On March 24, 2021, plaintiffs presented the Court with an unopposed motion for entry of the Consent Decree, which recited the Site's history, the roles played by each of the parties, and summarized the terms of the settlement. (D.E. 7, 8.)

## I. Background[1]

According to plaintiffs' brief, the Site consists of 1.23 acres located at 25 Sherwood Lane in Fairfield, Essex County, New Jersey. (D.E. 7, at 6.) From 1955 to 2001, Unimatic operated an aluminum die casting facility at the Site, where it used lubricating oils containing polychlorinated biphenyls ("PCBs") that were released into the environment. In April 2002, Unimatic sold the property to defendant Cardean, who leased the premises to Frameware and Profiles from 2002 until 2013. In March 2013, the New Jersey Department of Health recommended that all workers at the Site

---

[1] The Court derives the following from representations made in the complaint, the brief accompanying the plaintiffs' motion, and the proposed Consent Decree. (D.E. 1, 2-1, 7, 8.)

2

be relocated due to high levels of PCBs. Four months later, Cardean, Frameware, and Profiles vacated the premises and moved their businesses elsewhere.

In 2015, the EPA performed a remedial investigation and feasibility study to determine the nature and extent of contamination at the Site. It later determined that the soils were contaminated with PCBs and pesticides, and on September 20, 2016, the EPA issued a decision that called for, among other things, the demolition of a building and the remediation of contaminated debris and soil. Currently, the EPA is investigating other locations at the Site to determine the nature and extent of contamination in the groundwater, surface water, and sediments. In performing these response actions, the EPA and NJDEP continue to incur response costs.

On November 27, 2020, plaintiffs brought this action against Unimatic, Cardean, Frameware, and Profiles to seek recovery of the costs associated with the release and threatened release of hazardous substances into the environment from the Site, and on the same day, lodged the Consent Decree. (D.E. 1, 2.) Thereafter, the EPA published a notice of the lodged Consent Decree in the Federal Register on December 4, 2020, which invited the public to comment on the proposed judgment for a period of 30 days. NJDEP also solicited public comment for 60 days after publication of the notice in the New Jersey Register on January 4, 2021. Both periods have concluded, and no comments were received.

As alleged in the complaint, Cardean is liable as the current owner and operator of the Site; Frameware and Profiles are liable as operators of the Site; and Unimatic is

3

liable as a person who owned or operated the Site at the time of disposal of hazardous substances. (Compl. ¶¶ 27, 28.) In undertaking response actions to address the contamination, the EPA and NJDEP incurred response costs that have not been reimbursed. (*Id.* ¶¶ 25, 33.) The complaint alleges that each defendant is liable for reimbursement of the response costs as provided under CERCLA and the Spill Act. (*Id.* ¶¶ 26-36.)

Pursuant to the Consent Decree, Unimatic agrees to pay a total of $4,399,198.65 in resolution of its liabilities at the Site.[2] Of that amount, Cardean will receive $900,000 to satisfy various encumbrances on the property before marketing it for sale it and providing the proceeds to plaintiffs. The Consent Decree allocates 90% of the remaining $3,499,198.65 to the EPA and 10% to the NJDEP. In addition, Cardean agrees to dismiss Unimatic from its state court litigation,[3] and if successful in obtaining a judgment against the remaining defendants in that action, Cardean also agrees to pay up to $200,000 of the recovery to the EPA and NJDEP. Finally, Unimatic agrees to transfer to plaintiffs the remainder of the funds held in escrow since the sale of the property to Cardean.

---

[2] The EPA acknowledges Unimatic's "limited financial ability to pay for response costs incurred and to be incurred at the Site." (D.E. 7, at 8 n.1). Therefore, Unimatic's CERCLA and Spill Act liability is settled on an "ability-to-pay basis." (*Id.* at 16.)

[3] *Cardean, LLC v. Unimatic Mfg. Corp.*, Docket No. L-5864-13 (N.J. Super. Ct. Law Div. filed July 17, 2013).

4

In exchange for its payments, Unimatic will receive covenants not to sue from the EPA and NJDEP. Cardean will also receive covenants not to sue in return for providing plaintiffs a lien on the Site and maintaining the property until it is sold.

## II. Standard of Review

CERCLA was passed in 1980 in order to "ensure the cleanup of the nation's hazardous waste sites." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 206 (3d Cir. 2003). The statute encourages the use of consent decrees as a means of advancing the public interest and minimizing litigation. *See* 42 U.S.C. § 9622(a). The standard of review applied by the district court in reviewing CERCLA consent decrees is deferential. If a consent decree is "fair, reasonable, and consistent with CERCLA's goals," it should be approved. *Tutu*, 326 F.3d at 207 (citing *United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 823 (3d Cir. 2000)). When reviewing Spill Act settlements, federal courts apply the same standard of review applied to CERCLA settlements. *See, e.g., N.J. Dep't of Envtl. Prot. v. Atl. Richfield Co.*, 33 F. Supp. 3d 259, 264 (S.D.N.Y. 2014) (citing *Reichhold, Inc. v. U.S. Metals Ref. Co.*, 655 F. Supp. 2d 400, 444 (D.N.J. 2009); *N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 821 F. Supp. 999, 1009 (D.N.J. 1993)).

## III. Discussion

### A. Fairness

In examining the fairness of a consent decree, a court must satisfy both procedural and substantive considerations. *Tutu*, 326 F.3d at 207. Courts should give

5

deference to the EPA's expertise in crafting consent decrees, and to CERCLA's policy of encouraging settlements. *Se. Pa. Transp. Auth.*, 235 F.3d at 822. The NJDEP, as a government actor committed to the protection of the public, is also afforded deference for its decision to enter into settlements negotiated on behalf of the public interest. *N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp.*, 453 N.J. Super. 588, 663 (Law Div. 2015), aff'd, 453 N.J. Super. 272 (App. Div. 2018).

### 1. Procedural Fairness

"Procedural fairness requires that settlement negotiations take place at arm's length." *United States v. Wyeth Holdings LLC*, 2015 WL 7862724, at *2 (D.N.J. Dec. 3, 2015) (Thompson, J.) (citing *United States v. Cornell-Dubilier Elecs., Inc.*, 2014 WL 4978635, at *4 (D.N.J. Oct. 3, 2014)). "When evaluating procedural fairness, a court must examine the negotiation process leading to the consent decree and gauge its 'candor, openness and bargaining balance.'" *Id.* (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)).

Here, the Consent Decree consists of various settlement agreements that were a product of arm's length discussions that took place over a period of several years. (D.E. 7, at 14.) All parties subject to the Consent Decree were represented by counsel, and the underlying negotiations involved multiple drafts of settlement documents before the parties arrived at the mutually acceptable Consent Decree. The Court finds the Consent Decree to be procedurally fair.

### 2. Substantive Fairness

"Substantive fairness requires that the terms of the consent decree [be] based on 'comparative fault' and apportion liability 'according to rational estimates of the harm each party has caused.'" *Tutu*, 326 F.3d at 207 (quoting *Se. Pa. Transp. Auth.*, 235 F.3d at 823). "As long as the measure of comparative fault on which the settlement terms are based is not 'arbitrary, capricious, and devoid of a rational basis,' the district court should uphold it." *Se. Pa. Transp. Auth.*, 235 F.3d at 824 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 87).

Under the terms of the Consent Decree, Unimatic and Cardean share responsibility for the cleanup costs associated with the contaminated Site. As the former owner and operator of the Site, Unimatic used PCB-laden oils from 1955 to 1973 (D.E. 7, at 14), and is liable for response costs under CERCLA Section 107(a) and N.J.S.A. 58:10-23.11g. Unimatic has agreed to pay all of its remaining assets to the EPA and NJDEP, thus bearing the cost of the harm it caused in a fair and justified way. The Court notes that Cardean has agreed to cooperate with the EPA for cleanup purposes, and pursuant to the Consent Decree, will provide the EPA access and restrict use of the Site. (D.E. 2-1, ¶ 9.) Since Cardean did not contribute or exacerbate the contamination at the Site, it is subject to a smaller portion of liability because of its limited role as the current owner and operator. The Court is satisfied that the Consent Decree is sufficient to meet the standards of substantive justice as

Unimatic and Cardean are each held accountable for paying amounts reflective of their respective roles in the creation of the contamination at the Site.

**B. Reasonableness**

To determine if a proposed consent decree is reasonable, three factors are taken into account: (1) the technical effectiveness of the plan for environmental cleanup; (2) the amount of monetary compensation to the public; (3) and the overall fairness of the decree in light of the relative strengths of the parties and foreseeable risk of loss. *Cannons Eng'g Corp.*, 899 F.2d at 90. However, "[i]f the decree provides that the government may recoup its costs, 'reasonableness' requires that the settlement adequately reimburse the public fisc for incurred costs attributable to the [responsible parties]." *United States v. Atlas Minerals and Chems., Inc.*, 851 F. Supp. 639, 652 (E.D. Pa. 1994) (citing *Cannons Eng'g Corp.*, 899 F.2d at 89-90). "A settlement may be deemed unreasonable . . . if it is based on a clear error of judgment, a serious mathematical error, or other indicia that the parties did not intelligently enter into the compromise." *United States v. Acton Corp.*, 733 F. Supp. 869, 872 (D.N.J. 1990) (Brown, J.) (citing *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 686 (D.N.J. 1989)).

Here, the settlement proceeds will go towards the EPA and NJDEP's continued efforts to clean up and remove hazardous substances from the Site. While there are limited resources that the defendants can contribute, Unimatic settles its CERCLA and Spill Act liability by paying $3,499,198.65. That sum, coupled with the

proceeds generated from the eventual sale of the Site as well as a portion of Cardean's potential recovery in its pending state court action, represents a significant portion of the outstanding unreimbursed response costs.[4]  The parties also gain immediate resolution and avoid the uncertainty, delay, and expense of litigation in reaching a mutually agreed upon settlement.

The foregoing considerations make the Consent Decree reasonable.

**C. Consistency with CERCLA's Goals**

CERCLA and the Spill Act have two primary objectives: to ensure the "prompt and effective cleanup by responsible parties, while preserving both public finances and public health."  *United States v. Kramer*, 19 F. Supp. 2d 273, 289 (D.N.J. 1998) (Simandle, J.).  *See also FMC Corp. v. U.S. Dep't of Commerce*, 29 F.3d 833, 840 (3d Cir. 1994) (*en banc*) (CERCLA has the "essential purpose of making those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created") (quoting *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1221 (3d Cir. 1993)).  The court should approve a consent decree consistent with these two goals.  *See Cannons Eng'g Corp.*, 899 F.2d at 87.

---

[4] According to the complaint, as of December 31, 2019, the EPA has incurred at least $8,744,500 in response costs that have not been reimbursed.  (Compl. ¶ 25.)  NJDEP has also incurred an unspecified amount of cleanup and removal costs that have not yet been reimbursed.  (*Id.* ¶¶ 33, 34.)

9

Under CERCLA, the government is tasked with either obtaining the performance of remedial work by the responsible parties or seeking to ensure that the funds paid in response to a release or threatened release of hazardous substances are recovered through the liability scheme set forth in CERCLA, wherever possible. *See United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 733 (8th Cir. 1986). As stated above, owners of contaminated property are among those parties charged with cleanup liability. *See* 42 U.S.C. § 9607(a) ("[T]he owner and operator of a . . . facility . . . shall be liable for (A) all costs of removal or remedial action incurred by the United States Government . . . ; (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.")

Pursuant to the Consent Decree and in line with CERCLA's remedial and retroactive statutory scheme, Unimatic is held accountable for ensuring payment to the EPA and NJDEP in the amount of $3,499,198.65 as reimbursement for their continued efforts to clean up the Site. The same goes for the payments to be made by Cardean. The Consent Decree also serves CERCLA's goal of reducing litigation and transaction costs associated with response actions. *See Cannons Eng'g Corp.*, 899 F.2d at 90 ("The reality is that, all too often, litigation is a cost-ineffective alternative which

can squander valuable resources, public as well as private.") The Court notes that according to plaintiffs' brief, "Defendants have consented to entry of the Consent [Decree] without further notice," demonstrating a willingness to move quickly without the delay, expense, and uncertainty associated with further litigation. (D.E. 7, at 19.)

CERCLA empowers the EPA to pursue a variety of administrative and legal actions against hazardous contaminated site owners and operators, including negotiating settlements. 42 U.S.C. § 9622. CERCLA, therefore, encourages settlements such as this one. Accordingly, the Court finds that the Consent Decree is consistent with CERCLA's goals.

## IV. Conclusion

For the foregoing reasons, this Court finds that the Consent Decree is fair, reasonable, and consistent with CERCLA's goals. The government's request to enter the Consent Decree is granted. An appropriate Order will issue.


Date: May 6, 2021
      /s/ Katharine S. Hayden
      Katharine S. Hayden, U.S.D.J.